181 So.2d 791 (1965)
Lawrence GRANATA, Ind. etc., Plaintiff-Appellee,
v.
Maury SIMPSON et al., Defendant-Appellants.
No. 6479.
Court of Appeal of Louisiana, First Circuit.
December 21, 1965.
*792 Horace C. Lane, Anthony J. Clesi, Jr., of Gordon & Clesi, Baton Rouge, for appellants.
Charles W. Franklin, of Franklin & Keogh, Dennis Whalen, of Tilton & Whalen, Baton Rouge, for appellee.
*793 Before LOTTINGER, LANDRY, REID, BAILES and F. S. ELLIS, JJ.
BAILES, Judge.
This is a tort action arising out of a vehicular accident involving an automobile owned and driven by Jesse Gene Brown in which plaintiff's minor daughter, Josephine B. Granata, was riding as a guest passenger, and a pickup truck owned and driven by defendant, Maury Simpson, and insured by the other defendant, State Farm Mutual Automobile Insurance Company.
The trial court awarded plaintiff-appellee the sum of $1,199.05 for medical expenses incurred in the treatment of his daughter, and general damages in the sum of $6,500 for the use and benefit of the minor, Josephine B. Granata. From this judgment, defendant-appellants appeal.
The plaintiff brought this suit individually and in the capacity of administrator of the estate of his said minor daughter. Individually, he seeks to recover for doctors and hospital expenses incurred in the treatment of the daughter's injuries. In his petition, he alleges hospital and medical expenses of $4,000, doctor bills of $1,000, and future medical expenses of $10,000, making a total of $15,000. As administrator of his daughter's estate, he sued to recover a total amount of $57,000 for physical pain and suffering, future pain and suffering, permanent disability, mental pain and anguish and for loss of time from school.
The plaintiff did not join as a party defendant the host driver, Jesse Gene Brown, however, by third party petition the defendants, Maury Simpson and State Farm Mutual Automobile Insurance Company, seek, in the event it is finally determined that Maury Simpson was guilty of negligence that was a proximate cause of the accident, that the court find that Jesse Gene Brown was guilty of joint and concurrent negligence that was also a proximate cause of the accident, and that any judgment rendered finding Maury Simpson liable to plaintiff that an in solido judgment therefor be rendered against third-party defendant.[1]
The record shows the following facts. This accident occurred about eight p. m., on October 4, 1963, at the intersection of Plank Road, more correctly designated at this place as Louisiana Highway No. 67, and Thomas Road in East Baton Rouge Parish. For clarity it should be stated that Plank Road runs north and south, that Thomas Road intersects Plank Road on the west, and that the continuation of Thomas Road on the east side of Plank Road is known as Comite Drive. Controlling traffic entering or crossing Plank Road is a stop sign and also a red flashing light. This same flashing light is yellow or amber for traffic traveling on Plank Road. On this occasion, Mr. Simpson was traveling alone and driving south on Plank Road. The sedan in which plaintiff's daughter, Josephine, was riding was traveling east on Thomas Road. In addition to the driver, Brown, and Josephine Granata, this vehicle was occupied by Josephine's date, Sherrel J. Aucoin. All three occupants were seated on the front seat with Josephine in the middle and young Aucoin on the right side.
It is the contention of Brown that he stopped his vehicle on Thomas Road prior to entering Plank Road, and that immediately after stopping and before he could make the right turn that he contemplated making, his vehicle was struck by the Simpson *794 pickup truck. He testified that he never at anytime saw the Simpson vehicle prior to the collision. The photographs of the Brown Vehicle filed in the record show extensive damage to the entire front of the vehicle. All three of the occupants testified that Brown stopped prior to entering Plank Road.
Defendant, Maury Simpson, testified that he at no time saw the Brown vehicle prior to the collision. He assigned no physical reason for not having seen this vehicle as it approached the intersection, although he was given ample opportunity to explain his reason for not seeing it. Mr. Simpson stated that as he approached the scene of the accident he was traveling between forty and forty-five miles per hour, that he was aware of the flashing caution light, that he glanced to his right and then to the left, and that the speed limit for this area was posted at forty-five miles per hour. The photographs filed in evidence shows extensive damage to the entire right side of the Simpson truck.
Young Miss Josephine Granata testified that Brown was driving at about forty-five miles per hour on Thomas Road, that as he approached the intersection he slowed down and stopped before entering Plank Road; that he stopped long enough to look both ways; that she saw him look both ways; that she did not see anything coming and did not see the other vehicle prior to the collision, however she contended that her vision was blocked to the left.
Sherrel J. Aucoin testified that the Brown vehicle slowed down and stopped for a couple of seconds, that he did not see any south bound traffic on Plank Road, and that he did not see the Simpson truck until after the accident. Although he steadfastly maintained that Brown stopped before entering Plank Road, he admitted that he had made a prior statement that Brown did not stop. He attempted to excuse this inconsistency by stating that he was mistaken in his prior statement.
In addition to the occupants of the two vehicles, the record contains the testimony of Trooper Arthur LeBlanc who investigated the accident. The Trooper testified Brown told him he did not stop before entering the intersection. He testified that the posted speed limit was forty-five miles per hour; that his investigation shows the accident occurred in the southbound traffic lane on Plank Road; that there were no skid marks left by either vehicle leading up to the point of impact; that vision between Thomas Road and Plank Road was impaired for 150 feet from the intersection extending north on Plank Road, and that it was obstructed for about 100 feet more. It was the trooper's testimony that one traveling on Plank Road could not distinguish a headlight of a vehicle traveling on Thomas Road because of the obstruction of vision caused by weeds, grass and trees.
Frank Ashford was called as a witness. He testified that he was driving about seventy-five feet behind Simpson. It is deducted from his testimony that Simpson was traveling at between 40 and 45 miles per hour at the time of the accident. He testified that Brown did not stop before entering Plank Road; and that he could see a "pretty good ways back down Thomas Road" from where he was driving as he approached the intersection.
Edward Williams, a motorist stopped on Comite Drive at the intersection waiting for traffic to clear in order to permit his entrance into Plank Road, testified that he saw the Simpson truck approach and also the Brown vehicle as it approached the intersection, that from the speed of each it became apparent to him that a collision was going to occur. He testified that Brown did not stop prior to entering Plank Road; that the impact occurred approximately in the center of the intersection; and that he estimated Simpson's speed at between forty and forty-five miles per hour, and Brown's speed at thirty-five *795 to forty and that Brown did not appear to slow down.
On the question of visibility at this intersection, the photographs in evidence clearly demonstrate that there was no impairment or obstruction to vision for persons traveling either on Thomas Road or Plank Road. It was shown that these photographs were taken about ten days after the accident and that the scene depicted in these photographs was the same as that which existed on the date of the accident. We cannot reconcile the trooper's testimony that there was both obstruction and impairment of vision with the clarity demonstrated by these photographs.
From the testimony of the witnesses and the photographs in evidence, we find that Jesse Gene Brown did not stop before entering Plank Road from Thomas Road, that there was no obstruction to or impairment of vision to Brown's left or Simpson's right either along Thomas Road or along Plank Road that could have or did prevent them from observing each other as they approached the intersection, and that each should have seen the other; and likewise we find that Maury Simpson drove into this intersection at a speed of from forty to forty-five miles per hour, that there was at the time of the accident in operation a flashing yellow or amber light for control of traffic along Plank Road, and that Simpson failed to see, by his own admission, the Brown vehicle approaching the intersection.
LSA-R.S. 32:234 sets out the duty of drivers of motor vehicles on approaching flashing signals such as the one used to control traffic at the intersection involved in this collision. It provides:
"§ 234. Flashing signals
A. Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:
(1) FLASHING RED (STOP SIGNAL)When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest cross-walk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.
(2) FLASHING YELLOW OR AMBER (CAUTION SIGNAL) When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through or past such signal only with caution.
* * *."
Defendants argue most strenuously before this court that the intersection of Plank Road and Thomas Road was a blind intersection for 100 to 150 feet, and they argue that inasmuch as young Miss Josephine Granata, Mrs. Lawrence Granata and Trooper LeBlanc, all plaintiff witnesses, testified that vision was obscured or impaired, and defendants' witnesses, Frank Ashford and Edward Williams testified as to some obstruction of vision, the trial court was in error in not so finding that the intersection was blind as to defendant Simpson. In view of the clarity of the photographs that no obstruction or impairment existed and the obvious plain view of Brown to his left and of Simpson to his right, we do not find that the trial court committed error. We find that the trial court was correct.
It may be that the trial judge stated in his oral reasons for judgment that he was referring to photograph exhibit No. 10 instead of No. 9, these pictures are State Farm or defendant exhibits and the explanatory notes of photograph No. 10 states that it is a scene "looking south on Plank taken 190 *796 feet north of Thomas on east shoulder," and photograph No. 9 states that it is a scene "taken from SW corner of intersection looking up (north) Plank Note: bushes in center of picture," it is plain from this photograph No. 9 that a person seated in a pickup truck traveling south on Plank Road had an unobstructed and unimpaired view of traffic approaching the intersection on Thomas Road.
Defendants argue that the law applicable to the facts of this accident is that stated by this court in Gautreaux v. Southern Farm Bureau Casualty Insurance Co. (1955) 83 So.2d 667. Therein it is stated:
"To paraphrase the rule we have stated several times: A motorist crossing an intersection has the right to rely on the assumption that those approaching it will respect a stop sign which the motorist knows is located there, and accordingly he may proceed. If, however, in driving on the favored street he sees, or in the exercise of due care should see, that the other vehicle neglected to make the stop required by law, the motorist may himself be under a duty of stopping if by the exercise of reasonable care on his part the accident could have been avoided at the time he saw or should have seen the other vehicle violating its legal duty to stop before entering the favored thoroughfare. * * *."
We say at this time that this is a correct statement of the law of this state, and that the exercise of due care does not require a motorist traveling on a thoroughfare to go slow at every cross street as this alone would negate the advantage of thoroughfares in mass movement of traffic. However, in the Gautreaux case there was no yellow or amber flashing light facing the motorist on the thoroughfare, as there was in the instant case.
Defendants quote approvingly in their brief from the case of Janice v. Whitley (1959) 111 So.2d 852, in which this court stated:
"* * * Thus her naked failure to observe Whitley's approach prior to the impact was not a proximate cause of the accident. * * *."
It would appear that this case should give the defendant some comfort, however, upon examination thereof it is clearly distinguishable on the facts. The speed of the car on the thoroughfare was about 10 miles per hour and the driver could not have seen the movement of the defendant's vehicle prior to plaintiff's entry into the intersection.
Further quoting from the Janice v. Whitley case relied on by defendants, we find the following which is apropos:
"A fair construction of plaintiff's driver's testimony evidences that prior to her entry she made observation to her left but failed to perceive Whitley's car approaching because of a store building on the corner obstructing her view. While the driver on the less favored street may be held negligent for entering when his view of traffic approaching the intersection is obstructed by a blind corner (Ehtor v. Parish, La.App. Orleans, 86 So.2d 543), we have pointed out that the driver on the favored street is ordinarily not contributorily negligent in proceeding past a blind corner into an intersection at a reasonable speed, nor for failing to observe the approach of vehicles on less favored intersecting streets when the view is blocked. * * *."
Further, defendant seek relief from the judgment of the lower court by the holding of the Court of Appeal, Fourth Circuit, in the case of Westchester Fire Insurance Company v. Dardar (1963) 158 So.2d 239. There again we find the facts of the case dissimilar and the ruling not applicable to the facts of the instant case.
*797 In Jolley v. Continental Southern Lines, Inc., La.App., 170 So.2d 114, a bus collided with an automobile transport truck at a blind intersection. The bus was faced with a red flashing light and the transport with a flashing yellow light. The court in that case, quoting with approbation, from 7 Am. Jur.2d Section 210, p. 761, held that the flashing caution light at a street intersection denotes that traffic facing the light must enter the crossing cautiously and that what is required of the driver facing such a control is the exercise of no more than ordinary care.
Finally, defendant relies on two recent cases, one from this court and another from the Court of Appeal, Third Circuit, for overturning the judgment of the trial court.
In the case from this court, Reynolds v. Hardware Mutual Casualty Co. (1965) 178 So.2d 412, the facts are inapposite to those of the instant case. In the Reynolds case, there was nothing that Mrs. Bloomenstiel could have done to avoid the accident after she was aware of the fact that Dake was not going to accord her the right of way on this highway at a point where the speed limit was posted at sixty miles per hour.
In the case of Mahaffey v. State Farm Mutual Automobile Insurance Company (1965) La.App., 175 So.2d 905, we find the facts are dissimilar and the case is distinguishable for that reason and the ruling of the court is not controlling of the instant case.
We find that Jesse Gene Brown was guilty of negligence that was a proximate cause of the accident by driving into the intersection without stopping. This is too well settled to need any citation of authority. Brown was faced with both a stop sign and a flashing red light that required him to stop and look to see if the intersection was clear of traffic for such distance as to admit him to safely enter. His failure to stop renders him liable for the resulting damages to his guest passenger, Miss Josephine B. Granata.
We also find that defendant, Maury Simpson, was guilty of negligence in failing to heed the warning of the flashing yellow light which was installed at this intersection by the Department of Highways to control the movement of north-south traffic on Plank Road. The statute, LSA-R.S. 32:234, supra, places the positive duty on Simpson to "proceed through or past such signal only with caution." We find that he failed in this duty in proceeding through this intersection at 40 to 45 miles per hour without observing the approach of the Brown vehicle on his right at such speed as to give notice to him that it might not stop before entering Plank Road. We find that Simpson was not keeping a proper lookout and was not operating his vehicle at such speed that he could have stopped in time to avoid the accident. See: Randall v. Baton Rouge Bus Company (1960) 240 La. 527, 124 So.2d 535.
We find appropriate to a decision of this case, the ruling of this court in the case of Savoy v. Cooley, (1962) 144 So.2d 223, page 225:
"[1] Though we held in O'Conner v. Continental Southern Lines, Inc., La. App., 124 So.2d 380 that traffic on a right of way street, uncontrolled by a semaphore signal, was entitled to enter an intersection relying upon the assumption that the party approaching on the inferior street will respect the superior right of way inasmuch as there was nothing in the speed or movement of the vehicle approaching on the inferior street to make the driver on the right of way street apprehensive or put him on guard, we believe where, as here, the intersection was controlled by a semaphore light which was *798 flashing red for the inferior traffic and yellow for Plaintiff, that Plaintiff was thereby given warning that caution was required of her in entering the intersection and she had no right to believe that her entrance therein could be made in full disregard of traffic on the inferior street. A motorist confronted with a caution light is not in the same position as one confronted with a green semaphore light which has been held to be an invitation to proceed through the intersection; on the other hand, the presence of the caution light serves to give warning to the motorist that he is required to proceed through the intersection with caution. Thus the yellow light is a restriction on his movement through the intersection rather than an invitation to proceed oblivious of other traffic. Though the driver on the favored street when confronted with the yellow light may ordinarily rely on the motorist approaching the intersection on the inferior street stopping as required by the red light confronting him, if the evidence reflects such a motorist will not stop then the duty rests upon the driver on the favored street to avoid the accident if he can. The amber light serves as a warning to proceed with care and a motorist is guilty of negligence if he fails to take measures to avoid obvious danger.
* * *."
We hold that from Brown's approach of the intersection, had Simpson been keeping a proper lookout and had he been proceeding through this intersection with caution, he would have observed that Brown was not going to stop. His failure to observe and his failure to take every precaution to avert the accident was negligence that was a proximate cause of the accident.
The young daughter of plaintiff suffered a comminuted fracture of her left femur, and also numerous abrasions and lacerations. An open reduction was carried out in the treatment of this injury. An intermedullary nail was used in the fixation and reduction of this fracture. She was a patient in the hospital for about ten days, and was on crutches for about four months. The intermedullary nail was removed after ten months. She was a patient again in the hospital for the removal of the intermedullary nail for about three days. Her doctor testified that she was in some pain both prior to and after the operation. He felt she had post-operative pain for three or four days with it gradually subsiding; and that she was in pain for about two days after removal of the nail. The doctor also testified that there was no residual disability, she had no limp, and that her prognosis was excellent. The trial judge also noted that she walked normally and with no limp.
The trial court awarded this young lady $6,500. The plaintiff has answered the appeal, asking that the award be increased to $12,500, on the ground that the award by the trial court was inadequate.
The trial judge found that from the indicated location of the incision made on the thigh for the open reduction of the fracture of the femur that a scar was present as testified to by the doctor, and that this would be unsightly and a detraction to the beauty of this young lady. In this we would have to agree. This is a compensable disfigurement to her.
In the absence of any disability, with the claimant making a totally uneventful recovery and from our examination and appreciation of the jurisprudence of the quantum of damages, we find that the award of the trial court fairly and adequately compensates this young lady for the pain, suffering, inconvenience and disfigurement which she endured as a result of her injuries.
*799 We find no manifest error in the judgment of the trial court and concur in its judgment.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
Affirmed.
NOTES
[1] This case was consolidated with that of State Farm Mutual Automobile Insurance Company v. Brown, 181 So.2d 799, No. 6480 on the docket of this court. In this latter case the plaintiff, State Farm Mutual Automobile Insurance Co. seeks to recover from defendant, Brown, the sum it paid its insured, Simpson, under the uninsured motorist provision of its policy. Separate opinion will be rendered in that case.