205 So.2d 744 (1967)
Elvin B. LOCKHART et ux., Plaintiffs-Appellees,
v.
McINNIS-PETERSON CHEVROLET, INC., et al., Defendants-Appellants.
No. 7170.
Court of Appeal of Louisiana, First Circuit.
December 19, 1967.
Rehearing Denied January 29, 1968.
Writ Refused March 8, 1968.
David W. Robinson, of Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, for appellants.
*745 W. Brian Babin, of Lonnie, Davis & Associates, Baton Rouge, for appellees.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
This is a suit for damages resulting from an automobile accident. The petitioners are Elvin B. Lockhart and his wife, Mrs. Shelly G. Lockhart. The defendants are McInnis-Peterson Chevrolet, Inc., its employee, Roy M. Bonadona, and the Fidelity and Casualty Company of New York, the liability insurer of McInnis-Peterson Chevrolet, Inc. The Lower Court awarded judgment in favor of petitioners and against defendants, and the defendants have taken a suspensive appeal. The petitioners have answered the appeal, seeking an increase in quantum.
This suit arises out of an automobile accident which occurred on March 16, 1966, at approximately 12:00 o'clock noon at the intersection of North 10th Street and Boyd Avenue in the City of Baton Rouge, Louisiana. The weather at the time of the accident was clear and dry. North 10th Street is an access road to Interstate Highway No. 10, providing one-way north bound traffic. North 10th Street consists of three traffic lanes in the block south of the intersection with Boyd Avenue, but narrows to two lanes immediately north of the intersection. South of the intersection, North 10th Street is thirty-three feet in width.
Boyd Avenue runs generally in an east and west direction and consists of single lane two-way traffic running east and west. Boyd Avenue has a width of twenty-four feet. At the intersection of North 10th Street and Boyd Avenue there is a semaphore blinking light, with the yellow or amber flashing light facing the traffic on North 10th Street and the red flashing light facing the traffic on Boyd Avenue. These flashing lights were in operation at the time of the accident in question.
Mrs. Shelly G. Lockhart, a petitioner herein, was a guest passenger in a 1965 Rambler automobile owned and driven by Mrs. O. A. Burge, which was traveling east on Boyd Avenue and approaching the intersection of Boyd Avenue and North 10th Street. Roy M. Bonadona, an employee of defendant, McInnis-Peterson Chevrolet, Inc., was traveling north on North 10th Street, in a 1961 Pontiac automobile and was approaching the intersection of Boyd Avenue and North 10th Street.
The accident occurred when Mrs. Burge pulled into the intersection in front of defendant Bonadona, in disregard of the flashing red light which was facing her. The Bonadona vehicle struck the Burge automobile near the right front door, and the Burge automobile thereupon collided with a truck which was stopped in the westbound lane on Boyd Avenue outside of the intersection facing west.
The trial judge found concurrent negligence on the part of both drivers and rendered judgment in favor of Mrs. Lockhart in the sum of $8,500.00 and in favor of Mr. Lockhart in the sum of $1,314.52. These judgments were rendered against the defendants subject to a credit of fifty per cent thereof, as a compromise settlement had been made between the petitioners and the liability insurer of the Burge automobile prior to trial.
Mrs. Lockhart testified that at the time of the accident she was riding on the right front seat of the Burge automobile. Shortly before the impact, Mrs. Burge stopped for a red light at the corner of 9th and Boyd, one block west of the scene of the accident. When the light turned green she started on across the overpass over the expressway approaching the intersection of North 10th Street. There was some discussion between the two as to whether the light at the intersection of North 10th and Boyd Streets would turn green. She did not notice that the light was flashing red. She testified that Mrs. Burge came to a *746 rolling stop prior to entering the intersection, at which time she instinctively looked over her right shoulder and saw no traffic approaching on 10th Street. She then looked into her purse in the process of getting a cigarette and Mrs. Burge started on into the intersection. She stated that she never did see the other vehicle prior to the impact, but she did hear a screeching noise and had time to say, "Oh, my God, Lou, its a goner", immediately after which the impact occurred. Mrs. Lockhart further testified as follows:
"Q. How fast would you estimate Mrs. Burge was going when she went across this bridge?

A. Well, I assume she must have been doing about eight or ten miles, because as I said she had come to a rolling stop." (Italics supplied.)
Although her answer was not responsive to the question, it is apparent that Mrs. Lockhart estimated the speed of the Burge automobile after she had come to the "rolling stop" at the intersection of Boyd and North 10th Streets.
As a result of the accident, Mrs. Lockhart received personal injuries, for which she seeks an award in damages, and her husband seeks medical damages.
Defendant Bonadona, on the other hand, testified that he was a mechanic with McInnis-Peterson Chevrolet, Inc., he had performed certain repairs to the Pontiac automobile and was in the process of test driving same at the time of impact. He testified that he was driving north on North 10th Street and stopped for a red light at the intersection of North Street, which was one block south of the scene of the accident. When the light turned green, he proceeded on North 10th Street toward Boyd Avenue and when he was about half way of the block he noticed the approaching Burge vehicle about midway of the bridge that crosses the expressway. He testified that when he got almost to the intersection, he saw the front end of her car entering same, but was unsuccessful in averting the accident. From the testimony of this witness, it therefore appears that both vehicles were approximately midway of their respective blocks when Mr. Bonadona first noticed the Burge vehicle.
Mr. Bonadona further testified that he presumed that the driver of the Burge vehicle would stop as it approached the flashing red light. He stated that after seeing the Burge vehicle he slacked off his gas as he approached the intersection. As he approached the scene of the accident, he did not have a clear view to the bridge for the first half of the block, as there was a decided incline, however, after passing half way, there was only a slight incline and he could see traffic on Boyd Street fairly well. During the course of his testimony, this witness changed his statement to the effect that he did not let up on the gas until he was only about one-fourth of the block closer to the intersection. Upon noticing that the driver of the Burge automobile was not going to stop in obedience to the red flashing light, Mr. Bonadona applied his brakes, in an attempt to avoid the collision. He did state, however, that he was traveling in the center lane of traffic and that upon applying his brakes, his car swerved somewhat to the right and was in such a turning condition at the time of the impact. Although the witness testified that the Burge vehicle was traveling at a normal rate of speed, he was unable to estimate his own speed, however he did not believe that he was driving his car in a faster than at a normal rate of speed for a city street.
The police officer who investigated the accident was unable to locate any skid marks made by either of the vehicles. He located the point of impact of the first collision, that is between the Pontiac and the Burge vehicle at twenty-seven feet east of the west parallel of 10th Street, or six feet west of the east parallel of 10th Street and eight feet north of the south parallel of east Boyd Avenue. The point of impact between the Burge automobile *747 and the truck was placed at sixteen feet north of the south parallel, or eight feet south of the north parallel of Boyd Avenue and eight feet east of the east parallel of North 10th Street. The truck was therefore, eight feet east of the intersection at the time of impact number two. The distance between the first impact, between the Burge car and the Pontiac, and the second impact between the Burge car and the truck, was fourteen feet, as was testified by the police officer.
The officer estimated the damages to the Burge automobile at about $300.00, the damage to the Pontiac at about $300.00 and the damage to the truck at about $400.00.
From the evidence with regard to the points of impact, it is apparent that after the first collision, the Burge vehicle continued generally in its prior easterly direction but at a slight angle which started eight feet north of the south parallel of Boyd Avenue, as impact number two was sixteen feet north of the south parallel of Boyd Avenue, the angle therefore, would be approximately eight feet less the width of the Rambler, which we presume was at least five feet. Furthermore, as the first point of impact was six feet west of the east parallel, and the second impact eight feet east of the east parallel, both of North 10th Street, while traversing these few feet in a northerly direction, the Burge vehicle traversed approximately fourteen feet in an easterly direction prior to striking the truck.
The trial judge in his oral reasons for judgment found as a matter of fact that the "rolling stop" exercised by Mrs. Burge and as described by Mrs. Lockhart did not in fact occur and that Mrs. Burge proceeded into the intersection without interruption. The trial judge also determined that Bonadona exercised no caution other than relieving his foot pressure on the accelerator. He further concluded that Mrs. Burge entered the intersection first. It is apparent from his reasons that the trial judge concluded and held that Bonadona had failed to exercise such caution as the law required.
Admitting that the issue to be decided herein is a close one, the resolution of which finds us divided, we believe that the aforementioned findings of fact by the trial judge are entitled to great weight and our opinion concerning the determination thereof conforms to that of the trier of fact. We certainly do not think that the judge a quo committed manifest error in these determinations.
The question of law involved, namely: the respective rights of motorists proceeding into an intersection controlled by blinking red and blinking amber semaphore traffic signals is likewise a troublesome one. However, for reasons hereinafter stated the majority of this court is of the opinion that the trial judge has properly applied the applicable law to the aforementioned findings of fact.
LSA-R.S. 32:234 sets out the duty of a driver of a motor vehicle (Mrs. Burge) when approaching an intersection controlled by a blinking red light, which duty is the same as that required of a motorist approaching an intersection controlled by a stop sign. Sub-section A(2) provides:
"When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles (Bonadona) may proceed through or past such signal only with caution." (Parenthesis and emphasis ours).
Webster defines caution as "prudent forethought to minimize risk."
The application of the aforementioned statute has been considered on numerous occasions and there was evolved therefrom several well established rules. An intersection wherein one street is controlled by a blinking red light and another by a blinking yellow light is not the same as an intersection controlled only by a stop sign. In the former situations both directions of traffic are subject to control whereas in the latter situation a motorist traveling on a *748 favored street has the right to assume that an approaching motorist governed by a stop sign will in fact obey the stop sign. A motorist approaching an intersection controlled by a blinking amber light has the right to assume that another motorist controlled by a blinking red light will obey the same, however, the difference is that the motorist governed by the blinking yellow light must exercise caution and cannot rely entirely on the law applicable to a stop sign. In other words an intersection marked by both blinking red and blinking yellow lights is a controlled intersection with respect to both motorists. Savoy v. Cooley, 144 So.2d 223 (La.App., 1st Cir., 1962, rehearing and writs denied); State Farm Mutual Automobile Ins. Co. v. Merritt, 185 So.2d 832 (La.App., 3rd Cir., 1966). In this latter case the opinion very carefully analyzes the jurisprudence on the subject. See Wise v. Prescott, 244 La. 157, 151 So.2d 356; Landrum v. New Amsterdam Casualty Co., La. App., 149 So.2d 182; Granata v. Simpson, La.App., 181 So.2d 791. While each of these cases turned on the factual issues presented they do very clearly set forth the law on the subject. In Savoy v. Cooley, supra, the court stated:
"A motorist confronted with a caution light is not in the same position as one confronted with a green semaphore light which has been held to be an invitation to proceed through the intersection; * * *. Thus a yellow light is a restriction on his movement through the intersection rather than an invitation to proceed oblivious of other traffic. * * *"
In Landrum v. New Amsterdam Casualty Co., supra, the court stated:
"We believe, however, that the blinking yellow light at the intersection added an additional duty on the driver approaching on the right-of-way street and that duty is to approach the intersection with caution commensurate to the situation. Such a blinking traffic light would indicate to any reasonable person that the intersection is more dangerous than other intersections where such a light does not exist. * * *" (Emphasis ours.)
In Landrum v. New Amsterdam Casualty Co., supra, and Jolly v. Continental Southern Lines, Inc., 170 So.2d 114 (La.App., 2nd Cir., 1964), the intersections involved which were controlled by blinking amber lights were blind intersections to the point that motorists approaching the amber signal could not observe the approach of motorists controlled by a blinking red light until they were right at or in the intersections. In these cases it was found as a matter of fact that the motorists governed by a blinking amber light acted as swiftly and prudently as could be expected and were accordingly exculpated of any negligence.
In the recent cases of Jackson v. American Insurance Co., La.App., 182 So.2d 525 and Thibodaux v. Potomac Insurance Co., La.App., 201 So.2d 159 we had occasion to review situations similar to the case at bar. In the Jackson case the trial judge determined and we affirmed that a motorist controlled by a blinking amber light on one highway approaching an intersection of another highway controlled by a blinking red light, acted with proper caution when said motorist observed that the truck controlled by the blinking red light appeared to stop in obedience thereto and then proceeded into the intersection. The plaintiff therein had every reason to believe that the truck would remain in a safe position as the evidence indicated it appeared to do. In the Thibodaux case the trial judge held and we also affirmed that a motorist governed by a blinking amber light who was proceeding into a controlled intersection at 15 miles per hour who failed to see and observe another motorist controlled by a blinking red light was guilty of negligence in failing to see that which said motorist should have seen which constituted lack of caution on his part.
As stated by us in the Thibodaux case the line of demarcation is a thin one but that each case must be determined on *749 its own merits and the question of whether or not a given motorist acted with reasonable caution is one of fact.
In the instant case the record in our opinion clearly reflects that Bonadona did not act with reasonable caution as required by law. Bonadona observed the approaching Burge vehicle when both vehicles were approximately one half of the distance of a block from the intersection. Bonadona simply ceased accelerating his vehicle and permitted his vehicle to "coast". When he first observed the Burge vehicle, he assumed that she would stop. He continued in this assumption until it was too late to avoid the accident. What he really did was to continue to "coast" right into the intersection. The trial judge found that Bonadona's vehicle left no skid marks and accordingly he applied his brakes too late. Bonadona's testimony very aptly describes his position. When he was one half block away he assumed that the Burge vehicle would stop. When he was one quarter of a block away he assumed the Burge vehicle would stop. The trial judge concluded that the Burge vehicle was at or in the intersection before Bonadona did anything about it. We are not in a position to hold that the trial judge committed manifest error in this conclusion.
With respect to the quantum in this case which plaintiffs ask be increased and defendants urge be reduced, the trial judge stated:
"The evidence in this case shows that Mrs. Lockhart sustained several fractures in the accident in question, that is, a fracture of four ribs on the right side, the fracture of the right clavicle, at least three fractures in the pelvic area and the lower sacral area. According to her physician, Dr. W. Shewen Slaughter, she had no internal injuries and there were no displacements in the fracture sites. No surgery was required. She was confined to the hospital for nine days and then returned to her home where she was immobilized in bed for approximately seven weeks. Dr. Slaughter saw her from time to time during this period, and on or about June 30, 1966, that is, about three and a half months following the accident, he found that the fractures had healed satisfactorily and felt that her progress had been very good. He examined her again on January 31, 1967, and found that she had completely recovered without any permanent disability, although she still had some complaints.
In my opinion Mrs. Lockhart is entitled to an award of $7000 for the injuries just related.
On October 3, 1966 Mrs. Lockhart saw Dr. M. D. Hughes, a dental surgeon, relative to injuries to her teeth. This, it will be noted, was almost nine months after the accident. Dr. Hughes found that Mrs. Lockhart had previously lost fifteen of her teeth, leaving seventeen remaining teeth, all described as being front teeth. Of these seventeen remaining teeth he found that twelve were very loose. He extracted these twelve teeth and stated it was necessary to extract the other five teeth because it was impossible to provide her with anything other than full dentures, both upper and lower, which was done. Dr. Hughes was of the opinion that in all probability the accident contributed to the looseness of Mrs. Lockhart's teeth. He stated that there was not enough bone loss to account for this looseness. He of course could not say positively that the accident had any connection with the condition of the teeth but he was of the opinion that it probably did.
The court feels that some award should be made for the damage to the teeth, and it will be fixed at $1500. This makes a total award of $8500 for Mrs. Lockhart.
Special damages were stipulated in favor of Mr. Lockhart in the sum of $1044.52. The bill of Dr. Hughes was not stipulated but is allowed, it being in the sum of $270.

*750 For these reasons there is judgment in favor of Mrs. Lockhart in the sum of $8500, and in favor of Mr. Lockhart in the sum of $1314.52."
In our opinion the amount awarded to Mrs. Lockhart for personal injuries and to Mr. Lockhart for special damages are neither inadequate nor excessive and evidences no abuse of the trial judge in fixing the amounts thereof and his judgment in these respects is affirmed.
For the above and foregoing reasons the judgment of the district court is affirmed at appellants' costs.
Affirmed.
LOTTINGER, Judge (dissenting).
Due to the facts in this case I respectfully dissent from the majority herein because I am of the firm opinion that my colleagues are imposing a greater degree of care on Mr. Bonadona than is required under our law. The facts as set forth in the majority opinion are substantially correct.
Unfortunately the record is void as to the distances regarding the length of the block which was traversed by defendant Bonadona along 10th Street prior to the accident, as well as the length of the block traversed by Mrs. Burge on East Boyd Avenue, prior to the accident.
We have not been favored by the testimony of Mrs. Burge herself, who was driving her vehicle at the time of the accident. Although the record indicates that she was available, as she was living only a short distance from Baton Rouge, the petitioners failed to call her on their behalf. The defendants contend that this failure on the part of petitioners should be held against them.
The Lower Court, although holding that Bonadona was traveling at a greater speed than was Mrs. Burge, did not come to the conclusion that Bonadona was exceeding the speed limit. It also held, as is apparent from the physical facts, that Mrs. Burge entered the intersection prior to Bonadona. The Court, however, held Mr. Bonadona guilty of contributory negligence.
I feel that the facts of the present case are strikingly similar to those before the Court in Guarisco v. Swindle, La.App., 132 So.2d 635, in which this Court said:
"There was nothing about the action of Swindle when Guarisco first observed him when he was 50 to 75 feet east of the intersection which could reasonably have caused Guarisco to anticipate that Swindle would not respect his superior right-of-way and bring his car to a stop before it preempted the intersection in accordance with the red signal flashing at the semaphore, cognizance of which Mr. Guarisco had as he was a frequent user of Scenic Highway. There were no exceptional circumstances observable by Mr. Guarisco as a prudent motorist which should have served to warn him of any danger in proceeding through the intersection at the rate which he was traveling. On the contrary, to have averted this collision Mr. Guarisco would have been required to report to the reverse of the rule and instead of indulging in the accepted legal conclusion that Swindle would stop his car before entering the intersection in the face of the red light, Mr. Guarisco would have had to assume that Mr. Swindle intended to run the red light and cross the Scenic Highway in the path of his on-coming car. At the speed Mr. Guarisco was traveling he was afforded two seconds within which to make his decision. Certainly, under the circumstances Guarisco as a reasonable prudent driver would be warranted first in the assumption that Swindle would stop his car at the intersection; * * *"
Now, Mr. Bonadona was a frequent user of North 10th Street and knew that there was a red signal light flashing to the approaching traffic on Boyd Avenue. As he *751 approached the intersection, he released the accelerator and correctly believed that his right-of-way would be honored, and there were no exceptional circumstances to show otherwise. At the speed of the other vehicle, he had every reason to believe that his right-of-way would be honored. It was not until Mrs. Burge had come to a "rolling stop" and then pulled into the intersection that Mr. Bonadona realized that she did not intend to stop and accord him the right of way. As Mrs. Burge was then traveling at a speed of some eight to ten miles per hour, as was testified by her guest passenger, a speed at which she would traverse some twelve to fourteen feet per second, when the danger became apparent to Mr. Bonadona he had only about two seconds to take action as might be necessary to avoid the collision. Of course this small limit of time was not sufficient for Mr. Bonadona to take effective action to avoid the impact.
This clearly indicates to me that prior to the accident Mr. Bonadona was proceeding at a slow rate of speed, and I say this particularly because of the apparently small force of impact exerted by his vehicle on the Rambler automobile driven by Mrs. Burge.
The law with reference to a driver approaching a flashing semaphore signal is set forth in Louisiana Revised Statutes, titled 32, Section 234. This statute provides that the driver of the vehicle approaching the flashing red, or stop, signal "shall stop before entering the nearest cross-walk at an intersection or at a limit line when marked, or if none, then before entering the intersection." With regard to the driver approaching a flashing yellow or amber caution signal, this statute provides that the driver "may proceed through or past such signal only with caution."
In Granata v. Simpson, La.App., 181 So.2d 791, the Court held both drivers guilty of negligence when they both proceeded into an intersection at a speed of some 40 to 45 miles per hour without stopping, or exercising caution with regard to their respective duties. In that case, the Lower Court held the favored driver negligent in that he proceeded through the intersection at 40 to 45 miles per hour without observing the approach of the other vehicle on his right at such speed as to give notice that it might not stop before entering the intersection.
Such is not the case before us. Here, the record shows that Mrs. Burge slowed to a speed of some 8 to 10 miles per hour prior to entering the intersection. Under the circumstances I feel that the defendant Bonadona, had the right to rely on the assumption that the motorist approaching the stop signal knew it was there and would stop in obedience thereof. When it became apparent to Mr. Bonadona that the other vehicle would not stop, he put on his brakes but it was too late for him to take emergency measures to avoid the collision.
Another situation, similar to the one at issue, was present in Reynolds v. Hardware Mutual Casualty Company, La.App., 178 So.2d 412, in which an automobile operated by Mrs. Bloomenstiel was proceeding on a thoroughfare facing a blinking yellow light and a Volkswagen was proceeding on a thoroughfare facing a red blinking light. In that case, we said:
"Mrs. Bloomenstiel did not see that the Volkswagen would not yield her the right of way until it pulled into Perkins Road, at which time she took such action as she thought appropriate to attempt to avoid the accident. Until she saw the emergency created by the Volkswagen, she had a right to presume that traffic on the inferior thoroughfare would yield her right of way. We, therefore, find no negligence on the part of Mrs. Bloomenstiel."
The Supreme Court granted writs in the Reynolds case, supra, and through Justice Hamiter said this as to the possible negligence of Mrs. Bloomenstiel, 249 La. 268, 186 So.2d 588 at page 590:

*752 "In view of the fact that Mrs. Bloomenstiel was on the favored road, driving well within the legal speed limit, and there were no unusual circumstances which would require extreme caution, we agree with the Court of Appeal's conclusion that she was guilty of no negligent conduct. She had the right to assume that the Dake vehicle would honor her superior right-of-way. But when she realized that such would not be done it was too late for her to avoid the accident. We conclude, therefore, that the action of the Court of Appeal in dismissing the suit as to Mrs. Bloomenstiel's insurer (Hardware Mutual) was proper."
Nor am I impressed with the contention of the petitioner that Mrs. Burge preempted the intersection. In Sonnier v. United States Fidelity and Guaranty Company, La.App., 79 So.2d 635, we held:
"The right of pre-emption is not accorded the driver who blindly enters a favored street, without regard to oncoming traffic, and then attempts to absolve himself of liability because of the mere fact that he was there first. There is nothing in the record which would indicate to this Court that the defendant's assured could have done anything to avoid the accident."
I find that the petitioners have failed to prove any negligence on the part of the defendant driver by any preponderance of the evidence. There is no evidence which would indicate that Mr. Bonadona was exceeding the speed limit, nor that he was not exercising the precaution of a careful and prudent driver. On the contrary, the evidence shows that the Burge automobile was observed by him when both he and the Burge automobile were about one half a block from the intersection. Of course, at this time, he had a right to presume that the Burge automobile would stop at the intersection. The plaintiff herself testified that Mrs. Burge came to a "rolling stop" and then proceeded into the intersection at eight to ten miles per hour. Considering the speed of Mrs. Burge's vehicle, approaching the intersection, Mr. Bonadona had every reason to believe that his right-of-way would be honored. It was not until the Burge vehicle entered the intersection at a speed of from eight to ten miles per hour that Mr. Bonadona became aware of the fact that Mrs. Burge had no intention of stopping. This was only about a two second interval prior to the collision, during which period Mr. Bonadona was unable to take such measures as to avoid the accident. I find nothing in the record to show any negligence on the part of Mr. Bonadona, and for this reason I feel that the judgment of the Lower Court should be reversed.
For the above and foregoing reasons, I respectfully dissent.