MARCUS, Judge.
This is a suit for damages arising out of an intersectional collision which occurred in the city of Baton Rouge on February 19, 1966 at about one o’clock A.M. The intersection involved was Plank Road, a four-lane, north-south roadway and Choctaw Drive, a two-lane, east-west roadway. The intersection was controlled by a traffic signal which flashed red for Choctaw Drive and flashed yellow for Plank Road.
Plaintiff, Raful Neal, Jr., was the operator and owner of a 1955 Cadillac automobile and plaintiff, Harry Ranson, was a guest-passenger sitting in the front seat of said automobile. Mr. Neal was traveling north on Plank Road.
Defendant, Kenneth M. Weaver, age 20, was operating a 1960 DeSoto automobile which was owned by his father, defendant, Kenneth B. Weaver, and insured under a public liability insurance policy by defendant, New York Fire and Marine Underwriters, Inc. Mr. Weaver was traveling west on Choctaw Drive.
The Trial Judge rendered judgment in favor of the plaintiff, Raful Neal, Jr., and against defendants in solido in the amount of $2,930.46 and also in favor of plaintiff, Harry Ranson, and against the defendants in solido in the sum of $2,224.73. A sus-pensive appeal was taken by defendants only insofar as the judgment in favor of Raful Neal, Jr., is concerned. Answer to the appeal was filed by Raful Neal, Jr., requesting that the amount of the lower court’s award be increaseu to $3700.00.
Appellants in their brief and argument before this court do not contest the amount of the judgment fixed by the trial court, but contend only that the lower court erred in not holding the plaintiff, Raful Neal, Jr., to be guilty of contributory negligence.
Weaver testified that on the night of the accident, he had been in the company of a girl friend or acquaintance named Miss Jaime Blake who was a passenger in the front seat of his automobile at the time of the accident. He remembered driving around town, going to the Bengal Lounge on Highland Road for about twenty minutes, and then to his father’s apartment at 1201 North Foster Drive. Other than that, he did not recall anything about the accident; including the time it occurred, when he got on Choctaw Drive, his approach to the intersection, the speed he was traveling, or whether he was wearing his glasses or contact lenses at the time. He further testified that he did not remember seeing the car that struck him. He also did not recall whether or not he had had a beer that evening.
Miss Blake testified that she was a passenger in the Weaver vehicle, but that she was half asleep at the time of the accident. She did not recall how fast he was traveling or whether he had stopped at the intersection. She did recall going to the Bengal Lounge for about twenty minutes, and that both she and Mr. Weaver had one beer. • She remembered going by his parents’ apartment but was uncertain as to whether they had gone inside. She testified that she must have fallen asleep after they left the apartment. She did recall being picked up about 9:30 or 10:00 and, except for the aforesaid two stops, testified that they had been riding around all evening. She further testified that she did not think there was any obstruction to one’s vision coming north on Plank Road.
Neal testified that he slowed down as he approached the intersection and put his foot on the brake as he crossed the railroad track just before the intersection and then eased up to ’ the intersection. He claimed he was going about 10 or 15 miles per hour as he entered the intersection and *753 did not see the other vehicle until he got right into the intersection and was then struck on his right fender by the other car. He testified further that the other vehicle was going at a fast speed when he was hit and that his car was a total loss. The following testimony of Neal is significant:
Q. You were at least two lengths away from the intersection, weren’t you?
A. About two, I was about two lengths before I seen the car.
Q. From the intersection—
A. I was right up under the light when I, right up to the light just about when I saw the car.
Q. When you had your foot on the brakes, you were about two or three car lengths from the intersection, weren’t you?
A. I think about two car-lengths, yes, sir.
Q. And you were traveling about ten or fifteen miles an hour, weren’t you?
A. That’s right.
Q. So if you had seen that car you could have stopped right then, couldn’t you?
A. I imagine if I could have seen it I could have stopped.
(Tr. Page 94)
Harry Ranson was a passenger in the front seat of the Neal vehicle. He testified that they had been playing in a band at a club on North Street from 8 o’clock until about One A.M. He also claimed that they had had no drinks. He further testified that as Neal approached the intersection, he hit his brakes, slowed down and continued to slow down with his foot on the brakes as he went into the intersection. He testified further that Neal was traveling at a speed from 30 to 35 miles per hour prior to his slowing down at the railroad track, was moving at about 20 miles per hour when he went into the intersection, and about 15 miles per hour, at the time of the accident. He further indicated that he first saw the other vehicle at about 10 or 15 feet from the intersection and that he did not think there was anything to keep him from seeing the other car.
Carey E. Harper was the police officer who investigated the accident. He testified that upon arrival both vehicles were off the roadway. He further testified that according to the physical evidence, the point of collision was 14 feet west of the east parallel of Plank Road, 12 feet east of the center line of Plank Road, and 12 feet north of the south parallel of Choctaw Drive. He further testified that the front end of the Weaver car and the right front of the Neal vehicle were damaged. He estimated the damage to the Weaver car at $500.00 and to the Neal vehicle at $400.00. He also testified that there were no obstructions on the southeast corner of the intersection, and as far as he could recall, it was wide open. He also indicated that there were no skidmarks.
The Trial Judge, in his Reasons for Judgment concluded that Weaver did not stop in obedience to the flashing red light and that he was traveling at a rapid speed at the time of the collision. The trial court further found no negligence on the part of Neal for the reason that he was justified in assuming that cars traveling on Choctaw Drive would obey the flashing red light and for the further reason that if he had observed the approaching Weaver car sooner than he did, it is probable that he could not have brought his vehicle to a stop in time to avoid the accident.
After carefully reviewing the record, we concur in the finding of the trial court that Weaver did not stop for the flashing red light and that he was traveling at a rapid rate of speed at the time of the accident and was therefore negligent. However, we do not agree with the Trial Judge in his finding that there was no contributory negligence on the part of Neal.
The law with reference to a driver approaching a flashing red and yellow sema *754 phore signal is set forth in LSA-R.S. 32:234 which provides that the driver of a vehicle approaching a flashing red (stop signal) “shall stop before entering the nearest cross-walk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.” With regard to the driver approaching a flashing yellow or amber caution signal, the statute provides that the driver “may proceed through or pass such signal only with caution.”
Defendant, Kenneth B. Weaver, was clearly negligent in driving into the intersection without stopping, at a high rate of speed, and apparently with total disregard as to the oncoming traffic. This is too well settled to need citation of authority. A flashing red light required him to stop and look to see if the intersection was clear of traffic for such distance as to admit him to safely enter. His failure to stop and look under these circumstances renders him negligent which negligence was a proximate cause of the accident.
In Lockhart v. McInnis-Peterson Chevrolet, Inc., 205 So.2d 744, 748 (La.App. 1st Cir. 1967) the Court stated:
“A motorist approaching an intersection controlled by a blinking amber light has a right to assume that another motorist controlled by a blinking red light will obey the same, however, the difference is that the motorist governed by the blinking yellow light must exercise caution and cannot rely entirely on the laws applicable to a stop sign. In other words, an intersection marked by both blinking red and blinking yellow lights is a controlled intersection with respect to both motorists.”
In Savoy v. Cooley, 144 So.2d 223, 225 (La.App. 1st Cir. 1962) the Court stated:
“A motorist confronted with a caution light is not in the same position as one confronted with a green semaphore light which has been held to be an invitation to proceed through the intersection; * * *. Thus a yellow light is a restriction on his movement through the intersection rather than an invitation to proceed oblivious of other traffic.”
Accordingly, a motorist approaching an intersection controlled by a blinking yellow light must act with reasonable caution and vigilance as he enters the intersection in order that he may ascertain whether he can proceed into the crossing with safety. Savoy v. Cooley, supra; Granata v. Simpson, 181 So.2d 791 (La.App. 1st Cir. 1965); State Farm Mutual Automobile Insurance Company v. Merritt, 185 So.2d 832 (La.App. 3rd Cir. 1966); Pederson v. Schenck, 204 So.2d 317 (La.App. 1st Cir. 1967); Lockhart v. McInnis-Peterson Chevrolet Inc., supra.
Plaintiff, Raful Neal, Jr., did not fulfill the duty required of him by the above statute. Although he was aware that the intersection was controlled by a flashing yellow light facing his direction, he entered the intersection without ascertaining whether it was safe for him to do so. Not only did he fail to keep a proper lookout but he failed to keep any lookout whatsoever. By his own testimony he convicts himself of contributory negligence by admitting that if he had seen the Weaver vehicle, he could have stopped his vehicle in time to avoid the collision. We must bear in mind that this was a clear intersection, free of any obstructions, and Neal was traveling at about 10 or 15 miles per hour with his foot on the brake. Accordingly, had he been exercising the degree of caution as required by the law applicable to a motorist approaching an intersection controlled by a blinking yellow light, he would have seen the Weaver vehicle and could have stopped in time to avoid the collision. His failure to see that which he should have seen constituted lack of caution on his part. Accordingly, we find that Neal was contributorily negligent which negligence was a proximate cause of the accident and a bar to his recovery.
*755 Since the court has found contributory negligence on the part of Raful Neal, Jr., his answer to the appeal for an increase in the award of the lower court is moot. However, it should be observed that under Article 2133 of the Louisiana Code of Civil Procedure, an appellee must file his answer not later than 15 days after the return day or the lodging of the record, whichever is later. In the instant case, the record reveals that the return day was July 12, 1968 and that the record was actually lodged in the Court of Appeal, First Circuit on July 9, 1968. Since ap-pellee, Raful Neal, Jr., did not file his answer to the appeal until October 8, 1968 which is far in excess of the 15 days provided by law, his answer to the appeal was not timely filed.
For the foregoing reasons, the judgment of the lower court in favor of plaintiff, Raful Neal, Jr., and against the defendants is reversed at appellee’s costs.
Reversed.