170 So.2d 114 (1964)
Charles JOLLEY et ux., Plaintiffs-Appellants,
v.
CONTINENTAL SOUTHERN LINES, INC., et al., Defendants-Appellees.
No. 10308.
Court of Appeal of Louisiana, Second Circuit.
December 14, 1964.
Estess & Miller, Shreveport, for appellants.
Stafford & Pitts, Alexandria, for appellees.
Before HARDY, GLADNEY and AYRES, JJ.
*115 GLADNEY, Judge.
In the trial court four suits were consolidated involving claims arising from an accident which occurred at the intersection of U. S. Highways 80 and 65 in Tallulah, Louisiana, after midnight on February 5, 1962. Principally involved were separate suits by two passengers and countersuits by Auto Transports, Inc. and Continental Southern Bus Lines, Inc. In the appeal presently under consideration, Charles Jolley and his wife brought suit against Continental Southern Lines, Inc. and Auto Transports, Inc. and the latter's liability insurer, Transport Insurance Company. The judgment of the trial court in disposing of this suit rendered judgment in favor of Charles Jolley for special damages in the sum of $665.19 and in favor of Mrs. Margaret Jolley for the sum of $1,000.00 for personal injuries sustained by her. Both awards were against Continental Southern Lines, Inc., the judgment holding that the other named defendants were free of liability. From this decree plaintiffs have appealed and Continental Southern Lines, Inc., has answered the appeal taken by plaintiffs requesting this court to reduce the award of special damages awarded Charles Jolley by eliminating therefrom the sum of $450.00 for expenses for a future corrective operation for Mrs. Jolley. In the case of E. B. Ethridge against the Continental Southern Lines, Inc., following a decree in his favor in the district court, an appeal was not taken. Separate decrees in this court have been rendered in the other two cases in which appeals were so taken. See Auto Transports, Inc. v. Continental Southern Lines, Inc., La. App., 170 So.2d 120 and Continental Southern Lines Inc. v. Auto Transports Inc., La. App., 170 So.2d 120. Following trial of the instant case the judge of the district court rendered an exhaustive opinion which so accurately narrates the facts and issues and which so completely accords with our views that we adopt his opinion as our own with modification only by the elimination of references to the transcript and that portion of the decree dealing with awards. The opinion follows:
"All of the suits arose out of an accident that occurred shortly after midnight on February 5, 1962, at the intersection of U. S. Highway 65 (North Cedar Street) and U. S. Highway 80 (East Green Street) in the Village of Tallulah, Madison Parish, Louisiana. The accident involved a Silver Eagle Bus (Passenger bus) owned by Continental Southern Lines, Inc., driven by James Kelly, traveling west on U. S. Highway 80, which vehicle shall be referred to hereinafter simply as `Bus', and an automobile transport (truck and trailer, loaded with 6 new automobiles), owned by Auto Transports, Inc., which company's name has been formally changed to Woods Industries, Inc., Kansas City Division, insured by Transport Insurance Company, driven by Billy R. Teague, traveling south on U. S. Highway 65, which vehicle shall be referred to hereinafter simply as `Transport'.
"Vehicular traffic approaching this intersection at the time of the accident was governed by blinking or flashing red and amber lights placed at the intersection by the Department of Highways. Traffic on U. S. Highway 80 was controlled by red blinking or flashing lights; whereas the traffic on U. S. Highway 65 was governed by amber blinking or flashing lights. The intersection was blind for the two vehicles involved herein, inasmuch as a high brick building used as the City Hall and Fire Station was situated on the northeast corner of the intersection. This building obstructed the vision of the two drivers to such an extent that neither of them could observe the approach of the other until one of the vehicles had entered or practically entered the intersection. At the trial before this Court, the question of fault in these consolidated cases was submitted on the transcribed testimony that was taken in another personal injury case, by one of the passengers on the `Bus', arising out of the same accident that was tried before a jury in the United States District Court for the Western District of Louisiana, in *116 the Monroe Division, entitled `James A. Smith versus Continental Southern Lines, Inc., Auto Transport Insurance Company', which case shall be hereinafter referred to simply as the `Smith case'.
"The actionable negligence of the driver of the `Bus' is conceded, and the following facts were stipulated:
"`The bus of defendant, Continental Southern Lines, Inc., was equipped with a tachograph, or automatic recorder of the speed of the bus; and this tachograph showed the speed of the bus to have been twenty-eight (28) miles per hour at the moment of impact in the accident involved in this suit'
"The principal issue to be decided in these consolidated cases is whether the `Transport' driver was guilty of negligence, which would subject his company and its insurer to solidary liability as a joint tort feasor with the `Bus' company and which would amount to contributory negligence thus barring recovery by the `Transport' company and its insurer. When this issue is resolved only the question of quantum will remain.
"The bus driver's approach and entry into this intersection at a speed of 28 miles per hour with blinking or flashing red lights facing him at the moment of impact was gross negligence particularly since he was transporting fare paying passengers, which negligence has been conceded and stipulated by the `Bus' company and its insurer.
"In the two consolidated cases, Ethridge and Jolley claim joint and concurrent negligence on the part of both drivers, but the burden of establishing negligence on the part of the `Transport' driver is on the plaintiffs. In the case of the `Transport' company against the `Bus' company, because of the concession of actionable negligence on the part of the `Bus' company, the burden is upon the `Bus' company to establish contributory negligence on the part of the `Transport' driver.
"A careful study of the transcript of the testimony taken in the `Smith' case establishes that Billy Ray Teague, the driver of the `Transport', was enroute from Kansas City, Kansas, to Biloxi, Mississippi. Shortly after midnight on February 5, 1962 he was traveling south on U. S. Highway 65 within the Village of Tallulah, Louisiana, and when he was within 300 to 400 feet of the intersection of U. S. Highway 65 and U. S. Highway 80, while traveling at a speed of 20 to 25 miles per hour, he observed flashing yellow traffic lights facing him; that at this time knowing that he must turn left at this intersection, he decelerated and upon approaching the intersection he looked left, the visibility being obstructed by the building. He then looked right and entered the intersection in second gear at a speed of 6 to 8 miles per hour. While approaching and before entry into the intersection he observed that the traffic on the intersecting street or highway was receiving a red flashing signal. When in the intersection and as he was preparing to make his left turn into U. S. Highway 80 he saw the `Bus' bearing down upon him; he then accelerated his vehicle and sought to continue straight. The right front of the `Bus' hit the rear of the cab of the `Transport' at a point at least 10 feet back of the front bumper. The point of impact was 4 feet west of the intersecting center lines of said highways. The impact was so great the truck loaded with 6 new automobiles was carried upon the southwest curb, breaking a large electric power pole, and the vehicles came to a rest almost side by side on the west side of U. S. Highway 65, 90 feet south of the point of impact.
"The `Transport' driver first estimated his speed at the time of entry into the intersection at 6 to 8 miles per hour. When interrogated further, he frankly admitted his speed could have been greater, such as ten, twelve or fifteen miles per hour, but he maintained that he was in second gear and traveling at a speed slow enough *117 to permit him to successfully make the left turn onto U. S. Highway 80. This reasonable and plausible testimony relative to his speed as corroborated by the physical facts has not been refuted by the speculations of the other bus passengers.
"It is the opinion of this Court, that by virtue of the customary and legal distinction in the meaning of a flashing red signal and an amber one, the `Transport' driver had the right of way. If for any reason, the fact that the `Transport' driver was faced with an amber flashing signal light, denied him the superior right, then consideration must be given to the facts that the `Transport' entered the intersection first, and the `Bus' approached the intersection to the left of the `Transport'. Counsel have cited an ordinance of the Village of Tallulah designating U. S. Highway 65 as superior to U. S. Highway 80, but in view of the installation of traffic lights, this Court deems the ordinance ineffective.
"The Legislature by adoption of the rules of the road in the year 1962 more or less codified the law or general understanding of the meaning of flashing red and amber lights, LSA-R.S. 32:234. The flashing red light means stop and the flashing yellow or amber means caution.
"It has been stated elsewhere that:
"`A flashing red light is tantamount to a stop sign insofar as the duty of a motorist facing it to stop is concerned.' 164 A.L.R. 93.
"Also it has been stated elsewhere that:
"`While it is recognized that a flashing yellow light at a street intersection denotes that traffic facing the light must enter the crossing cautiously, it has been held that such a light requires the exercise of no more than ordinary care and it cannot be taken as a prohibition against crossing the intersection in the exercise of ordinary care.' 7 Am.Jur.2d Sec. 210, p. 761.
"Since the `Transport' driver enjoyed the right of way at this permanently blind intersection, and was aware of the fact that the traffic on the intersecting highway was receiving a red flashing signal light, this Court exculpates him from blame, fault and negligence herein, relying on the jurisprudence set forth in Koob v. Cooperative Cab Company, 213 La. 903, 35 So.2d 849 (1948) which reads:
"`The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees or should see, that the other car has not observed, or is not going to observe, the law. See Termini v. Aetna Life Ins. Co. et al., La.App., 19 So.2d 286; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Glen Falls Ins. Co. v. Copeland, La.App., 28 So.2d 145. See also Mayfield v. Crowdus, 38 N.Mex. 471, 35 P.2d 291; 2 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., sec. 1032, pp. 216, 217.'
"Also relying on the rules set out below:
"`Motorist with knowledge of location of stop sign has the right to assume that anyone approaching the intersection controlled by the sign will observe it.' Ellis Electric Co. v. Allstate Insurance Co. [La.App.], 153 So.2d 905.
"`A motorist on a right-of-way street with knowledge of the location of a stop sign, has the right to assume that any driver approaching intersection on the less favored street will bring his automobile to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees or should see that the other automobile has not observed or is not *118 going to observe the stop sign.' Suhre v. National Union, 244 La. 455 (1963); 152 So.2d 558.
"`A motorist who knows that he has right-of-way can assume that the other motorist is cognizant of this rule and will act accordingly.' Theunissen vs. Guidry [La.App.], 151 So.2d 499.
"`Motorist who proceeds across intersection on favorable light has right to assume that vehicles traveling in intersecting road-way will stop in obedience to red light.' Emmco Insurance Co. v. Ocean Accident & Guar. Corp. [La. App.], 151 So. 567.
"Defendant `Bus' company argues in brief that the speed of the `Transport' when it entered the intersection was 25 to 30 miles an hour as though it was positively established in the trial. The testimony as read by the Court, does not establish any such high speed, instead this Court is impressed with a speed of 6 to 10 miles an hour by the `Transport' at the time of entry into the intersection.
"The present case is much stronger than that of Martin vs. New Amsterdam Casualty Co. [La.App.], 97 So.2d 509. In that case the Court in holding that the motorist traveling on a favored highway was free from contributory negligence held:
"`Motorist driving on road on which traffic is governed by blinking amber light at intersection has right to assume that driver approaching on intersecting road on which traffic is governed by blinking red light will observe law by bringing his automobile to a full stop before entering intersection, but he cannot indulge in such an assumption if he sees or should see that driver on intersecting road has not observed or cannot observe the law with respect to stopping at the intersection.
"`Where a semaphore controlled traffic movement at intersection by blinking amber light facing vehicle on downtown roadway and blinking red lights facing vehicles on inbound roadway, and driver on downtown roadway saw only headlights of inbound automobile which was at right angles to and more than 100 feet from him, failure of driver on downtown roadway to sense or be cognizant of inbound automobile driver's inability to stop, was not negligence and did not bar his recovery from inbound driver for damages resulting from collision.'
"Defendant `Bus' company cites and relies on the following cases to show the case at bar is not an ordinary one and that the blinking amber light signaled greater danger requiring greater care:
"Wise vs. Prescott, 244 La. 157; 151 So.2d 356; Landrum vs. New Amsterdam Casualty Co., 149 So.2d 182; Bruce vs. Stuyvesant Insurance Co., 159 So.2d 424.
"In the Wise and Bruce cases the claimant sued public carriers and in both instances the decisions appeared to hinge upon the rule that a common carrier owed the highest degree of care to pay passengers, and that under the facts in each of the cases the drivers did not exercise the required degree of care, and therefore did not convincingly overcome the prima facie cases of negligence against them. This Court does not accept these two cases as authority to uphold the `Bus' company's contention, especially in view of Judge Bolin's holding in the `Bruce' case when he said:
"`Whether this would have amounted to negligence if plaintiff had been a mere guest passenger rather than a fare-paying passenger we are not required to say, but certainly it subjected the carrier to liability under the rule enunciated in Wise v. Prescott, supra.' 159 So.2d 424.
"Nor can this Court accept the Landrum case as authority to find the `Transport' driver guilty of negligence, for in that case, although the Court of Appeal believed that the blinking yellow light added an additional *119 duty on the driver approaching on the right-of-way street, it exonerated her even though she entered at a speed of 20 to 25 miles per hour. The `Transport' driver herein was in the relative position of Mrs. Landrum insofar as the blinking lights and right-of-way are concerned and the Court spelled out her duties thus:
"`Mrs. Landrum had the duty of proceeding into the intersection with caution at a reasonable rate of speed and also had the duty of looking carefully for the approach of vehicles along the inferior street.'
Then later the Court said:
"`We do not believe that it was necessary for her to slow her vehicle before entering the intersection, in view of the moderate rate of speed and her knowledge of the location of the stop signs granting her the right-of-way. Since the intersection is a blind one, it is obvious that Mrs. Landrum kept a close lookout and noticed the danger of the approaching vehicle as soon as it was physically possible to do so. We are in accord with the finding of the trial court that Mrs. Landrum was not guilty of any negligence.' Landrum v. New Amsterdam Casualty Co., 149 So.2d 186.
"This Court is of the opinion that the `Transport' driver fulfilled his duties.
"When the `Bus' driver absolutely ignored the flashing red light and entered this blind intersection at an excessive speed, there would have been but one way to avoid the accident, and that would have been for the `Transport' driver to stop before entering. To require him to stop before entering on a flashing amber signal when he knew the opposing traffic was receiving a red flashing signal is to require the same duties of him as those imposed for a red flashing light.
"Accordingly, for the reasons hereinabove stated, and in view of the admission of fault and liability by Continental Southern Lines, Inc., this Court finds the `Bus' company solely liable in the `Ethridge', #4204, `Jolley', #4223 and Auto Transports Inc., now Woods Industries, Inc., Kansas City Division, #4224, cases."
Counsel for Mrs. Jolley has seriously urged that the award of $1,000.00 made in her favor should be increased and counsel has furnished references to a large number of citations with respect to allowances for facial scars and disfigurement. Countering this request counsel for Continental Southern Lines, Inc. contends that the examinations made by Doctors A. J. Messina of Vicksburg, Mississippi, Lowell C. Butler and Ralph Riggs of Shreveport, Louisiana, disclose that the injuries to Mrs. Jolley's nose consisted of a deviated septum which was developmental and did not arise as a result of the accident, and further it is argued that the scar on the left side of the nose is healed and left no residuals. The trial judge allowed the sum of $450.00 in accordance with the recommendations made in the report of Dr. Butler dated October 20, 1962. This report recited:
"The residual scar on the left side of the nose which extended downward from the level of the eyebrow is still slightly depressed, is quite pale and soft. Sensation in this vicinity is normal and the scar is otherwise little, if any, unchanged from the time of her office visit in October, 1962. Revision of this scar, as previously reported, would require surgical revision under general anesthesia with approximately 48 hours of hospitalization. A combined hospital and medical expenses incurred in this would be $400 to $450."
We interpret the medical report as indicating that there will be a facial improvement as a result of the operation. As Mrs. Jolley, according to the record, is a very pretty young matron, we have no doubt that any improvement of a transfiguration upon her face would be most welcome. She testified that she has suffered humiliation *120 as a result of her external nose injury. However, it is indicated that the scar has improved progressively and presented a minimal cosmetic defect at the time of the trial. We conclude that it was proper for the district court to make this allowance. It does appear, however, the trial court in computing the special damages to Mr. Charles Jolley, totaled the amount thereof as being $665.19 whereas the correct sum should be $615.19. The judgment will, therefore, be amended by reducing the award in favor of Charles Jolley to the sum of $615.19.
It is our conclusion that the judgment from which appealed and as amended herein is affirmed at appellants' cost.