185 So.2d 832 (1966)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Appellant,
v.
Ruby Petry MERRITT, Defendant and Appellee.
No. 1686.
Court of Appeal of Louisiana, Third Circuit.
April 27, 1966.
*834 Plaisance & Franques, by Howard L. Franques, Jr., Lafayette, for plaintiff-appellant.
Fredric Hayes, Lafayette, for defendant-appellee.
Before CULPEPPER, TATE and HOOD, JJ.
HOOD, Judge.
State Farm Mutual Automobile Insurance Company, as the subrogee of its insured, John Tarver, instituted this action for damages against Mrs. Ruby Petry Merritt. The trial judge rendered judgment in favor of defendant, and plaintiff has appealed.
The suit arose out of a motor vehicle collision which occurred about 10:00 p. m. on August 8, 1963, at the intersection of Jefferson Street and Lee Avenue in the City of Lafayette. Tarver was driving his small, foreign-make car in a westerly direction on Jefferson Street at that time, and Mrs. Merritt was driving her Oldsmobile south on Lee Avenue. The left front part of the Merritt car collided with the right front portion of the Tarver vehicle. Tarver was injured as a result of that collision.
At the time of the accident there was in effect a liability insurance policy issued by plaintiff, covering the Tarver vehicle, which policy contained an uninsured motorist provision. Mrs. Merritt was not insured at the time of the accident, so pursuant to the uninsured motorist provision, State Farm paid Tarver a sum of money as damages for the personal injuries which he sustained in that accident. State Farm thereupon became subrogated to the extent of that payment to the rights of Tarver against the defendant.
It was raining and dark at the time the accident occurred. There was a curve in Jefferson Street at or very near this intersection, the curve being such that a motorist traveling west on Jefferson, and intending to continue on that street, must turn at a relatively sharp angle to his right just as he reaches or enters the intersection. A bank building, located in the northeast quadrant of the intersection, prevented either Tarver of Mrs. Merritt from seeing each other until at least one of them had entered, or practically had entered, the intersection.
Vehicular traffic approaching the intersection at the time of the accident was controlled by blinking or flashing red and amber traffic lights. An amber flashing light controlled traffic on Jefferson Street, the street on which Tarver was traveling, while a red flashing light controlled traffic on Lee Avenue.
The trial judge did not assign reasons for judgment, but since judgment was rendered for the defendant it is apparent that he concluded either that Mrs. Merritt was free from negligence or that plaintiff is barred from recovery because of contributory negligence on the part of Tarver. We will consider first the question of whether Mrs. Merritt was negligent.
The testimony of the two drivers is conflicting as to how the accident occurred. Tarvar stated that he was familiar with this intersection, that he saw the amber flashing light before he reached the crossing, that he knew that there was a red flashing signal light controlling traffic on Lee Avenue, and that he reduced his speed *835 from twenty or twenty-five miles per hour to a speed of about fifteen miles per hour as he approached the intersection. He further testified:
"* * * when I turned the corner I looked around the bank and I saw her coming. I saw her lights, and it appeared to me that she was slowing down. Now when I got out a little bit further into the intersection. I noticed that she wasn't stopping. In fact, she was coming on, so then I hit my brakes and she hit me and we bothI skidded ten, maybe five or ten feet, I don't know how far it was, and she hit me. * * *" (emphasis added)
The Tarver vehicle skidded five or ten feet up to the point of impact, but after colliding with the Merritt car it continued to travel substantially in the same direction through and beyond the intersection to the south side of Jefferson Street, where it struck the curb with enough force to cause Tarver's head to go through the windshield of his car.
Mrs. Merritt testified that she came to a complete stop at the intersection, that she waited for another car to go by and that her car was then struck by the Tarver vehicle while she was still stopped in that position. She stated that she was looking to her right before the collision occurred, and that she did not observe the Tarver vehicle approaching at any time before it struck her car. Although she stated that she "wasn't exactly in the intersection," she concedes that she "almost had to be to see around the bank." We think the evidence shows that at least the front part of her car was in the intersection at the time the collision occurred. The evidence does not show where Mrs. Merritt's automobile came to rest following the collision, but it does show that her car was damaged very little and she used it immediately after the collision occurred to take Tarver to the hospital. Photographs of the two automobiles, taken after the collision occurred, indicate to us that the Merritt car was moving at the time of the collision, and that the left front portion of that car struck the right front fender of the Tarver vehicle, at a point near the right headlight of that car. The relatively slight damage to the Merritt car, together with the fact that Tarver's lighter vehicle continued to travel in substantially the same direction it had been traveling just prior to the collision, convinces us that Mrs. Merritt was moving at a very slow rate of speed at the time the collision occurred, and that she stopped almost immediately at the point of impact.
We think the evidence shows that Mrs. Merritt was negligent in failing to maintain a proper lookout as she entered the intersection, and in proceeding into that intersection without first ascertaining that she could do so in safety. Her negligence in that respect was a proximate cause of the accident.
Defendant has pleaded the special defense of contributory negligence. We turn now, therefore, to the question of whether plaintiff is barred from recovery because of the contributory negligence of its insured, Tarver.
LSA-R.S. 32:234, subd. A(1) provides that when a red flashing traffic light is used at an intersection, drivers of vehicles shall stop before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign. LSA-R.S. 32:234, subd. A(2) provides that when a yellow lens is illuminated with rapid intermittent flashes "drivers of vehicles may proceed through or past such signal only with caution."
As observed by our brothers of the Second Circuit Court of Appeal in Jolley v. Continental Southern Lines, Inc., 170 So.2d 114, a flashing red light is tantamount to a stop sign insofar as the duty of a motorist facing it to stop is concerned. And, at an intersection controlled by red and amber flashing lights, the motorist on the street which is controlled by the amber light has the right-of-way. In the instant suit, Tarver had the right-of-way because *836 he had the superior right to proceed through the intersection, and Mrs. Merritt was subject to the rules which are applicable to a motorist who is faced with a stop sign.
Plaintiff directs our attention to the established rule that a motorist on a right-of-way street, with knowledge of the location of a stop sign on the intersecting inferior street, has the right to assume that any driver approaching the crossing from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees or should see that the other car has not observed or is not going to observe the law. Koob v. Cooperative Cab Company, 213 La. 903, 35 So.2d 849; Lavigne v. Southern Farm Bureau Cas. Ins. Co., La.App., 3 Cir., 125 So.2d 430.
We are in complete accord with the above stated rule, and we agree that it applies to some extent in a case such as this, where the intersection is controlled by red and amber flashing lights or by stop and caution signs. We believe, however, that a motorist on a favored street who approaches an intersection which is controlled by a yellow flashing traffic light is under a duty to exercise a greater degree of vigilance and care than is required of a motorist on such a street who enters an intersection on a green light or who approaches a crossing which is not controlled by traffic lights or signs of any kind. In our opinion, where an intersection is controlled by red and yellow flashing lights, the motorist on the right-of-way street who is confronted with the yellow light must exercise caution and vigilance as he enters the intersection in order that he may ascertain whether he can proceed into the crossing with safety. Savoy v. Cooley, La.App. 1 Cir., 144 So.2d 223 (cert. denied); Wise v. Prescott, 244 La. 157, 151 So.2d 356; Landrum v. New Amsterdam Casualty Co., La. App. 3 Cir., 149 So.2d 182; Granata v. Simpson, La.App. 1 Cir., 181 So.2d 791; and Bruce v. Stuyvesant Ins. Co., La.App. 2 Cir., 159 So.2d 424.
In Savoy v. Cooley, supra, a motorist on a right-of-way street was held to be negligent in proceeding into an intersection which was controlled by a flashing amber light. In so holding, the court stated:
"* * *, we believe where, as here, the intersection was controlled by a semaphore light which was flashing red for the inferior traffic and yellow for Plaintiff, that Plaintiff was thereby given warning that caution was required of her in entering the intersection and she had no right to believe that her entrance therein could be made in full disregard of traffic on the inferior street. A motorist confronted with a caution light is not in the same position as one confronted with a green semaphore light which has been held to be an invitation to proceed through the intersection; on the other hand, the presence of the caution light serves to give warning to the motorist that he is required to proceed through the intersection with caution. Thus a yellow light is a restriction on his movement through the intersection rather than an invitation to proceed oblivious of other traffic. Though the driver on the favored street when confronted with the yellow light may ordinarily rely on the motorist approaching the intersection on the inferior street stopping as required by the red light confronting him, if the evidence reflects such a motorist will not stop then the duty rests upon the driver on the favored street to avoid the accident if he can. The amber light serves as a warning to proceed with care and a motorist is guilty of negligence if he fails to take measures to avoid obvious danger. From the evidence in this case, despite the fact that Mrs. Savoy observed the approaching motorist, the Pace vehicle, rather than comply with the admonition given to her by the presence of the amber light and exercising caution, her action consisted in accelerating her vehicle and colliding with the Pace vehicle when she *837 could have avoided the accident simply by stopping her car." (emphasis added)
In Wise v. Prescott, supra, the driver of a bus on a right-of-way street, who was confronted with a "slow sign" at an intersection, collided with a vehicle which entered the crossing from an inferior street controlled by a "stop sign." In holding the bus driver negligent, our Supreme Court said:
"As the driver of the bus approached the intersection, he was confronted with a slow sign. What degree of care is required of a driver approaching such a sign? In our opinion, he is warned by such a sign that the locus or intersection is hazardous and unusual, his duty to exercise vigilance and prudence is increased, and it is inescapable that his right to rely on a motorist to obey a stop sign at that intersection is greatly decreased. When an intersection is controlled by a stop sign and a slow sign, a high duty of care is put on the drivers of vehicles on both thoroughfares, and, as stated by the Court of Appeal, a motorist when confronted with a slow sign must do more than diminish his speed. He must enter the intersection with extreme caution and vigilance so as to apprise himself that he may proceed safely across. Reducing his speed is only a partial fulfillment of the duty such a sign imposes." (emphasis added)
We stated in Landrum v. New Amsterdam Casualty Co., supra, that:
"We believe, however, that the blinking yellow light at the intersection added an additional duty on the driver approaching on the right-of-way street and that duty is to approach the intersection with caution commensurate to the situation. Such a blinking traffic light would indicate to any reasonable person that the intersection is more dangerous than other intersections where such a light does not exist. Although the additional duty to be cautious may vary according to the individual circumstances, in the case before us on appeal, Mrs. Landrum had the duty of proceeding into the intersection with caution, at a reasonable rate of speed and also had the duty of looking carefully for the approach of vehicles along the inferior street." (emphasis added)
And, in the recent case of Granata v. Simpson, supra, our brothers of the First Circuit, in concluding that a motorist on a favored street, who entered an intersection controlled by a yellow flashing light, was negligent, said:
"We also find that defendant, Maury Simpson, was guilty of negligence in failing to heed the warning of the flashing yellow light which was installed at this intersection by the Department of Highways to control the movement of north-south traffic on Plank Road. The statute, LSA-R.S. 32:234, supra, places the positive duty on Simpson to `proceed through or past such signal only with caution.' We find that he failed in this duty in proceeding through this intersection at 40 to 45 miles per hour without observing the approach of the Brown vehicle on his right at such speed as to give notice to him that it might not stop before entering Plank Road. We find that Simpson was not keeping a proper lookout and was not operating his vehicle at such speed that he could have stopped in time to avoid the accident. * * *" (emphasis added)
Applying the rules which are set out in the above cited cases, it appears that Tarver failed to exercise the degree of caution which was required of him as he entered this intersection.
Plaintiff, however, refers us to the case of Jolley v. Continental Southern Lines, Inc., supra, in which case a truck driver was held to be free from negligence in entering a blind intersection controlled by red and yellow flashing lights, he being on the right-of-way street and confronted with the yellow light. We readily distinguish that case from the instant suit on the facts. The *838 evidence in the Jolley case showed that the truck driver reduced his speed to eight or ten miles per hour as he approached the intersection, that he entered the crossing first, long before the bus on the intersecting inferior street reached it, and that the bus ran through the red flashing light at a speed of 28 miles per hour and crashed into the side of the truck at a point ten feet behind the front bumper of the truck. We agree with the trial and appellate courts that under those circumstances the truck driver exercised the degree of care which was required of him. In the instant suit, however, Tarver entered the intersection at a faster rate of speed than did the truck driver, the other vehicle obviously was already in the intersection, or almost in it when Tarver reached it, and the Merritt car was not being driven fast.
We also note that in Martin v. New Amsterdam Cas. Co., La.App.Orl., 97 So.2d 509, the driver on the favored street was found to be free from negligence where the intersection was controlled by red and yellow flashing signals. In that case, as in the Jolley case, however, the driver exercised caution in entering the intersection. He, in fact, stopped before entering the crossing, and then proceeded to cross when the motorist on the inferior street was more than 100 feet from him. We think the facts in that case are materially different from those presented here.
The evidence in the instant suit convinces us that Tarver entered this blind intersection at an excessive rate of speed. The fact that his car skidded several feet before the collision occurred, and continued to travel some distance before it ran into a curb with considerable force, indicates to us that he was driving in excess of the fifteen mile per hour speed which he admits. Regardless of the exact speed at which he was driving, however, it is clear that he did not approach and enter this intersection with caution, or in such a manner that he could have brought his car to a stop after he reached a point where he could determine whether another vehicle on the inferior street was also about to enter the crossing.
Our conclusion is that Tarver was negligent in failing to exercise the degree of caution which is required of a driver who is confronted with a yellow flashing signal as he approaches and enters an intersection. We think his negligence in that respect was a proximate cause of the accident, that plaintiff is barred from recovery because of Tarver's contributory negligence, and that the trial judge correctly rejected plaintiff's demands.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.