CULPEPPER, Judge.
This is a wrongful death action. Plaintiffs are respectively the widow and the minor daughter of Abraham Ardoin. He was killed when the pickup truck which he was driving was struck at a highway intersection by a large truck-trailer owned by the defendant, Crown Zellerbach Corporation, and being driven by the defendant, Walter A. Zwilling. The trial judge awarded the widow $15,000 and the minor daughter $5,000. Defendants appealed.
The substantial issues are (1) negligence of the defendant driver, (2) contributory negligence of the deceased and (3) whether the doctrine of last clear chance is applicable.
The accident occurred at the intersection of U. S. Highway 190 and Louisiana State Highway 97 in a rural area about 1 mile east of the town of Basile. At this location Highway 190 is a two-way, two-lane, main traffic artery, of blacktop construction 24 feet in width and running generally east and west. State Highway 97 is a two-way, two-lane road running north and south. It is paved with blacktop south of Highway 190, but graveled north thereof. Suspended over the center of the intersection is a blinking traffic light which flashes amber for Highway 190 and red for Highway 97. There is a large rice drying plant on Highway 97 about one-quarter mile north of Highway 190, but there are no buildings immediately at the intersection. It is surrounded by open fields and there is nothing to block the view of approaching motorists. There are no special speed zones and the speed limit for trucks is 50 miles per hour.
The accident occurred at about 6:00 a. m. on August 10, 1966. It was a clear, dry day and visibility was good.
The decedent, Mr. Ardoin, who was 63 years of age, was driving a 1950 International pickup truck in a northerly direction on Highway 97. He stopped for the red blinking light and after a few seconds proceeded on across the intersection. When the front of his vehicle reached a point a few feet past the pavement of Highway 190 and the rear was near the center line, the right front was struck by the front of the Crown Zellerbach truck, which was proceeding in a westerly direction on Highway 190. After the impact, defendant’s large truck and trailer went onto the north shoulder of Highway 190 and dragged the lighter pickup truck down the shoulder and the west bound lane of U. S. Highway 190. Finally it dropped the pickup truck which came to rest in the west bound lane of Highway 190 about 200 feet west of the intersection. Defendant’s large truck then came back onto Highway 190 and stopped 159 feet west of the pickup.
The defendant driver’s version of the accident is as follows: He was proceeding in a westerly direction on U.S. Highway 190 at a speed of 50 miles per hour. The truck was loaded with 20,000 pounds. When he was about 1500 feet east of the intersection he saw the Ardoin vehicle approaching on Highway 97 about 200 feet south of the intersection and blew his horn. He observed Ardoin drive to the intersection and stop for the blinking red light. Zwilling knew that a blinking amber light meant “caution” but when Ardoin stopped he assumed he would remain there and hence did not reduce speed. When Zwilling was about 125 feet from the intersection, or possibly farther, Ardoin started across Highway 190. The defendant motorist “touched” his horn a second time, applied his brakes and tried to turn to the right in an effort to avoid a collision. His right front wheels were about 1 foot off the north side of the pavement when the front of his truck struck the right front of the Ardoin vehicle. *138 After the impact, Zwilling did not attempt to brake his truck because it was on the shoulder and he was afraid he would go into the ditch or jack-knife, thereby increasing the hazard to both Ardoin and himself.
NEGLIGENCE OF THE DEFENDANT MOTORIST
The first issue is whether the defendant driver, Zwilling, was negligent. LSA-R.S. 32:234 provides in pertinent part as follows:
“A. Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:
“(1) FLASHING RED (STOP SIGNAL) — When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest cross-walk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.
“(2) FLASHING YELLOW OR AMBER (CAUTION SIGNAL) — When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through or past such signal only with caution.”
In State Farm Mutual Automobile Insurance Company v. Merritt, La.App., 185 So.2d 832 (3rd Cir.1966) we considered the duty of care of a motorist confronted with a flashing amber light. The argument was made that such a motorist has no greater duty than any other motorist on a right of way street, i. e., he can assume that drivers on inferior intersecting streets will stop and yield the right of way and he can indulge in this assumption until he sees or should see that the driver on the intersecting street is not going to obey the law. We rejected this contention and held as follows:
“We believe, however, that a motorist on a favored street who approaches an intersection which is controlled by a yellow flashing traffic light is under a duty to exercise a greater degree of vigilance and care than is required of a motorist on such street who enters an intersection on a green light or who approaches a crossing which is not controlled by traffic lights or signs of any kind. In our opinion, where an intersection is controlled by red and yellow flashing lights, the motorist on the right-of-way street, who is confronted with the yellow light must exercise caution and vigilance as he enters the intersection in order that he may ascertain whether he can proceed into the crossing with safety.” (citations omitted)
In Landrum v. New Amsterdam Casualty Company, La.App., 149 So.2d 182 (3rd Cir.1963) we stated:
“We believe, however, that the blinking yellow light at the intersection added an additional duty on the driver approaching on the right-of-way street and that duty is to approach the intersection with caution commensurate to the situation. Such a blinking traffic light would indicate to any reasonable person that the intersection is more dangerous than other intersections where such a light does not exist. Although the additional duty to be cautious may vary according to the individual circumstances, in the case before us on appeal, Mrs. Landrum had the duty of proceeding into the intersection with caution, at a reasonable rate of speed and also had the duty of looking carefully for the approach of vehicles along the inferior street.”
Applying these rules to the facts of the present case plaintiff argues that the defendant motorist should have reduced his speed and taken whatever precautions were necessary to avoid a collision in the event Mr. Ardoin did not obey the stop sign. On the other hand, defendants make a strong argument that Zwilling used reasonable *139 care under the particular facts of this case. They point out that this was an intersection of two highways in a rural area where there were no obstructions to view. Also, that the defendant motorist was observing carefully for the approach of vehicles toward the intersection and actually saw Mr. Ardoin approach and stop. Defendants say any reasonable motorist under the circumstances would have assumed that Mr. Ardoin would remain at the stop sign and hence Zwilling had a right to maintain his lawful speed of SO miles per hour through the intersection.
We conclude that caution commensurate with the situation required the defendant Zwilling to at least reduce his speed and bring his truck under better control. The circumstances on which we base this conclusion are as follows: (1) Expert opinion testimony, which will be discussed in more detail later, shows that a truck traveling SO miles per hour and of the size and with the load of that driven by the defendant Zwill-ing, requires 393(4 feet, including reaction time, to stop. This stopping distance is a great deal more than that of the average automobile. It increased the hazard and Zwilling’s duty increased proportionally. (2) There was a vehicle stopped at the intersection on the inferior highway. This fact increased the hazard. (3) Zwilling was traveling at the maximum legal speed.
We find the defendant driver was negligent for driving this large and heavily loaded truck at the maximum legal speed of SO miles per hour through an intersection where he was faced with a blinking yellow light and there was another vehicle stopped on the inferior highway.
NEGLIGENCE OF THE DECEDENT, MR. ARDOIN
The next issue is whether the decedent, Mr. Ardoin, was contributorily negligent. Defendants point out that under the above cited statute and jurisprudence a motorist faced with a blinking red light has the same duty of care as one confronted by a stop sign. Such a motorist must not only stop in obedience to the sign but he is also required to see approaching vehicles which he should see on the favored thoroughfare and to refrain from crossing until it is reasonably safe to do so. Mahaffey v. State Farm Mutual Automobile Insurance Company, La.App., 175 So.2d 905 (3rd Cir. 1963) and the authorities cited therein.
On the other hand, plaintiffs rely on the jurisprudence that a motorist on an inferi- or street need not wait until no vehicle is in sight before attempting to cross. Such a motorist is justified in crossing if there is no approaching vehicle within such a distance that a reasonably prudent person would think the crossing could be made in safety. See Gauthier v. Fogleman, La.App., 50 So.2d 321 and the cases cited therein.
Thus, a crucial, factual issue is how far defendant’s truck was from the intersection at the time Mr. Ardoin started across. An expert in accident reconstruction testified for each side in an attempt to establish how many seconds it took the front of the Ardoin pickup truck to start from a stopped position 3 feet south of the pavement on Highway 190 and thence proceed a distance of anywhere from 28 feet to 34 feet to the position on the north side of Highway 190 where it was at the time of impact. The theory is that if this time interval can be established, we can then calculate how far defendant’s truck was from the intersection when Ardoin started across, by multiplying the number of elapsed seconds by 73(4 feet, the number of feet per second traveled by defendant’s truck at 50 miles per, hour.
Plaintiff’s expert, Dr. Olin K. Dart, Jr., testified at some length as to the number of seconds required for Ardoin to cross to the impact position at various rates of acceleration. He used some very low rates and some high rates in answer to hypothetical questions. However, he made it clear that he did not know and was expressing no opinion as to whether Ardoin’s rate of acceleration was slow, medium or fast. Dr. Dart did estimate the acceleration ca *140 pability of a pickup truck of this type and age as being about 5 feet per second squared and calculated that at this rate it took Mr. Ardoin about 3.5 seconds to cross to the point of impact.
Dr. William H. Tonn, Jr., defendants’ expert in accident reconstruction, reached essentially the same conclusion as Dr. Dart, i.e., that Mr. Ardoin took 3.5 seconds to cross to the point of impact. Dr. Tonn then multiplied 3.5 seconds by 73.5, the number of feet per second traveled at 50 miles per hour, and concluded defendant’s truck was 257 feet from the intersection at the time Ardoin started across.
Of course, if defendant’s truck was only 257 feet from the intersection at the time Mr. Ardoin started across, he should have seen the truck and should have realized that it was unsafe to proceed. We have little difficulty in concluding that Mr. Ardoin was negligent.
LAST CLEAR CHANCE
The final issue is whether the doctrine of last clear chance is applicable. The essential elements of this concept are set out in the recent case of Richard v. Southern Farm Bureau Casualty Insurance Company, La.App. 212 So.2d 471 (3rd Cir. 1968) as follows:
“In order for the doctrine of last clear chance to apply, the plaintiff must establish: (1) That plaintiff was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) that defendant actually discovered or should have discovered plaintiff’s peril; and (3) that at the time defendant actually discovered or should have discovered plaintiff’s peril defendant had a reasonable opportunity to avoid the accident.”
Applying these rules to the facts of the present case we readily perceive that the first two requirements are met. However, the third element is not present, i.e., at the time defendant Zwilling should have discovered plaintiff’s peril. Zwilling did not have a reasonable opportunity to avoid the accident. As stated above, both experts in accident reconstruction testified the stopping distance for this large truck and trailer, including reaction time, was 393i/> feet. Under the facts as we have found them above, defendant’s vehicle was about 257 feet from the intersection at the time Mr. Ardoin started across. Defendant did not have time nor space to avoid the collision.
In his written opinion the district judge suggests that the defendant driver could have turned to the left and gone into the wrong lane of traffic, thus passing to the rear of the Ardoin pickup truck. We doubt seriously that Zwilling could have turned this large truck to the left a sufficient amount to pass to the rear of the Ar-doin vehicle. In any event, Zwilling acted reasonably under the circumstances. He touched his horn, applied his brakes, and turned to the right hoping either that Ar-doin would see him in time to stop or that he could pass to the right of the Ardoin automobile.
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is now rendered in favor of the defendants rejecting the demands of the plaintiffs at their costs. All costs of this appeal are assessed against the plaintiffs appellees.
Reversed and rendered.