TUCKER, Judge.
This is an appeal by the defendants, The Home Insurance Company, Squaw Transit Company, and Bern L. Martin, from an adverse judgment rendered by the trial court.
There, the appellants were cast in damages in the amount of $37,873.04 for the personal injuries and expenses incurred by the plaintiff, Benedict David, as a result of an automobile-truck collision involving a 1954 Chevrolet owned and operated by the plaintiff and a 1963 Mack tractor-trailer owned by Squaw, operated by Martin, and insured by the Home Insurance Company.
The accident occurred on La. Highway 77 in the Parish of Iberville on December 20, 1967, at approximately 6 :20 o’clock p. m. It was almost, if not totally, dark on this clear, dry evening. Martin had unloaded his trailer in Donaldsonville, Louisiana, that afternoon along with a similar Squaw tractor-trailer which was being driven by William S. Dellis and the two of them had begun their return to Tulsa, Oklahoma. Highway 77 in the vicinity of the point of collision is a narrow, winding roadway some twenty feet in width and running generally north-south. At the site of the accident, about two and one-half miles south of the Village of Grosse Tete are two sharp, unbanked curves with a straightaway between them of approximately five hundred feet. These curves are described in the record as having an “S” configuration.
With the Dellis truck leading and Martin following, the two tractor-trailers, which were each in excess of fifty feet in length, were traveling north toward Grosse Tete and had gone through the first curve, had passed through the five hundred foot straightaway, and the lead truck driven by Dellis had actually entered the second turn when the accident occurred. The Martin truck was still partially on the straightaway and had not yet entered the second curve.
Mr. David had finished work at about 5:30 o’clock for the Iberville Parish Police Jury on that day and had stopped off at the home of his son, Benedict David, Jr., where he had some coffee and a “highball” and *157 was then driving south, in the opposite direction of the defendant’s vehicle on his way home. Mr. Dellis stated in deposition that as he took the lead truck into the most northerly curve, that he saw the David vehicle coming at him and he thought that David was going to come on his side and hit him and that David almost did hit him. Some fifty feet from the point where David came out of the south end of the curve and on the straightaway, the David auto collided with the extreme rear of the second truck driven by Martin, severe bodily injuries being sustained by the plaintiff as a result thereof.
Subsequently, this action ensued, was tried on the merits, and without rendering written reasons, the trial judge entered judgment in favor of the plaintiff as indicated. The defendants have timely perfected this appeal. We conclude that the judgment of the court below must be reversed.
A decision in this action basically resolves itself to this question of fact: Did the David automobile cross the center line of Highway 77 and strike the defendant’s truck or did the truck encroach on the David lane of travel, thus precipitating the collision ?
In Mayes v. McKeithen, 213 So.2d 340, (La.App. 1st Cir. 1968), we find these comments, which are appropriate to the matter before us:
“[2-4] Before discussing the testimony of the various witnesses we should bear in mind that negligence is never presumed and the burden of proving negligence rests with the party who charges its presence. Thrash v. Continental Casualty Co., et al., supra [6 So.2d 75 (2nd La.App. 1942)]; Oliver v. Pitarro, 129 So.2d 39 (2nd La.App., 1961); Crier v. Marquette Casualty Co., supra [159 So. 2d 26 (La.App., 1963)]. This negligence must be established with reasonable certainty and by a preponderance of the evidence. The showing of mere possibility or probability of its existence is insuffi-
cient. Thrash v. Continental Casualty Co., et al., supra; McGregor v. Saenger-Ehrlich Enterprises, 195 So. 624 (2nd La.App., 1964). Probabilities, surmises, speculations and conjectures cannot be accepted as sufficient grounds to justify a recovery to a plaintiff who is charged with the burden of proof. Williams v. Wolfe, 187 So.2d 763 (1st La.App., 1966); Crier v. Marquette Casualty Co., supra; Lambert v. State Farm Mutual Auto. Ins. Co., 184 So.2d 107 (4th La.App., 1966).”
No one actually had a clear -view of the impact except the plaintiff, as the truck’s driver, Mr. Martin, stated that although he knew he was going to be hit by Mr. David, at his position in the truck’s cab, he was some thirty-five feet in front of the point of impact. However, four of the plaintiff’s own witnesses positively stated that Mr. David’s auto was positioned from one to two and one-half feet over the center line and into the truck’s northbound lane when they observed the Chevrolet’s location subsequent to the accident.
Officer Tom A. Davis, at the time of his testimony a Correctional Officer at Louisiana State Penitentiary at Angola, was, on the day of the accident a Trooper with the Louisiana State Police assigned with Troop A, and in that capacity, investigated this accident upon being called to the scene. He testified that the impact took place as the truck just began to enter the curve and the automobile was just exiting the curve. At pages 5 and 6 of his testimony, we find these observations:
“Q. Now, did you in your investigation attempt to ascertain where the point of impact occurred between these two vehicles?
A. Yes, sir, I did.
Q. And could you describe for us where the point of impact occurred and how you arrived at that conclusion ?
A. Judging from the gouge marks in the road and the position of the *158 vehicles and asphalt on the bottom of the vehicle and the impact where it pushed the car down, I judged it to be three and a half feet east of the center line. In other words, the ’54 Chevrolet was over the center line approximately three and a half feet. The tandem wheels of the truck virtually ran over approximately two feet of the car, just tore the fender off. And when it did, it pushed the car straight down. And when the car hit the pavement it left several feet of gouge marks. This asphalt was found still on the A-frame of the car and on the bottom of the bumper of the automobile.
Q. And this point was some three and a half feet into the lane being occupied by the truck?
A. That’s correct.
Q. There was three and a half feet then of the 1954 Chevrolet that was across the center line and into the truck’s lane of travel?
A. Right.”
According to Officer Davis, photographs D-7 and D-8 plainly show the asphalt marks dug out by the crushing force of the truck on David’s auto at the point of collision in the northbound lane. In that connection, we also note that in D-7 another straight gouge mark perpendicular to the roadway was identified by Officer Davis as the mark he saw made when the car was removed from the highway at his direction. The testimony clearly preponderates, therefore, in the defendants’ favor and is plainly to the effect that David’s auto was the offending vehicle.
The plaintiff theorizes, however, that the defendant’s truck initially hit the David auto in the southbound lane and drug it to its final resting point in the truck’s lane, thus creating the appearance that the plaintiff was at fault. This is essentially the testimony of Mr. David. The other witnesses offered on plaintiff’s behalf either did not clearly see the accident or did not arrive at the scene until it was over, with the exception of James A. Collins who was also traveling on Highway 77 in a southerly direction on that evening. He stated that he was about four hundred to five hundred feet to the rear of the David auto and that he saw the accident as it occurred.
He initially testified that from his location, Mr. David was completely on his side of the road and that the trailer was more in plaintiff’s lane than in its own. However, he stated that he did not see it “right at the time it happened” because of the headlights on the truck. Furthermore, certain of his testimony does not square with the physical facts. At the point where he places himself, some four hundred to five hundred feet to the rear of the David vehicle, he would, of necessity, have between him and the accident point, the second and most northerly “S” curve. We must also consider the fact that, although he was the first person at the scene after the wreck and although he was still there while the trooper was there, he never identified himself to Trooper Davis although that officer asked for witnesses among the persons present. Additionally, he was the only witness who stated that subsequent to the accident, no part of the David automobile whatsoever was across the dividing line into the truck’s lane, a clearly erroneous observation in view of the testimony of other of the David witnesses. Mrs. Rosa Lea Brown saw the truck pass from the kitchen of her home on the east side of the highway and she also saw the impact, but she could not see the David car as the crash occurred.
We think the Trooper’s assessment of the facts surrounding this collision is correct and that not only has the plaintiff failed to carry its burden of proof, the defendant Martin has exonerated himself of any negligence whatsoever, as the evidence preponderates to the effect that the plaintiff’s *159 actions were the sole and proximate cause of this accident.
The plaintiff has also asserted that the doctrine of last clear chance should apply in his favor should we find him to be contributorily negligent. We find those rules to be inapposite, however, as it appears that there was no negligence on the part of the defendant truck driver.
For the foregoing reasons we conclude that the lower court was manifestly erroneous in its finding of fact, and the judgment is reversed, and the demands of plaintiff-appellee are rejected at his costs.
Reversed.