HOOD, Judge.
Plaintiff, R. P. Smith, claims damages for personal injuries and other losses sustained by him as a result of a motor vehicle collision which occurred in St. Landry Parish. The defendants are Louis A. Robertson, Freiler Industries, Inc., and Transit Casualty Company. Judgment was rendered by the trial court in favor of defendants, and plaintiff has appealed.
The issues presented are whether defendant Robertson, the driver of one of the vehicles involved in the collision, was negligent, and whether he had the last clear chance to avoid the accident.
The collision occurred at about 10:30 A. M. on November 16, 1968, at the intersection of Louisiana Highway 167 and Cres-well Lane, near Opelousas, in St. Landry Parish. Highway 167 is a four-lane, divided, heavily traveled, concrete thoroughfare which runs generally north and south. Two lanes are for southbound traffic and the remaining two lanes are for northbound vehicles. A wide neutral ground separates the northbound from the southbound lanes. Creswell Lane is a hard surfaced street or highway which runs generally east and west at the point where it intersects Highway 167, and it also is a four-lane, divided highway at that intersection. Both of these thoroughfares are relatively straight and they are level. The weather was clear and visibility was good at the time of the accident.
Immediately before the accident occurred, plaintiff Smith was driving his own truck-trailer combination east, in one of the two eastbound lanes of traffic on Creswell Lane. When he reached the intersection of Creswell with the southbound lanes of traffic on Highway 167, he proceeded to cross that highway, and while the front of his truck was in at least one of the southbound lanes of that highway, it collided with another truck-trailer combination which was being driven south on Highway 167 by defendant Robertson.
The vehicle being driven by plaintiff was a large diesel, cab-over-engine truck and trailer combination. The trailer was loaded with 42,000 pounds of sweet potatoes, and the entire vehicle with its load weighed about 72,000 pounds. The vehicle being driven by Robertson was a relatively new Mack truck, with a long flatbed trailer. That combination of vehicles was about 50 feet long. The trailer was not loaded, and the weight of the truck and trailer was approximately 25,000 pounds.
Robertson was employed by Freiler Industries, Inc., and he was performing duties in the course of his employment at the time the accident occurred. Transit Casualty Company was the liability insurer of Freiler at that time.
Richard Hughes, who also was an employee of Freiler, was riding as a passenger in the Robertson truck at the time of the accident. Hughes testified by deposition and his testimony is in the record. Bill Henry Hurst was riding as a guest passenger in the Smith truck at that time. The parties stipulated, however, that Hurst has no recollection of how the accident occurred, due possibly to amnesia sustained by him as a result of the collision, and for that reason he was not called as a witness by either party.
Smith and Robertson, the drivers of the vehicles involved in the accident, gave conflicting and irreconcilable versions of how the collision occurred.
Smith’s version is that he followed a tank truck which was traveling east on Creswell Lane to the intersection, that that truck stopped before proceeding to cross Highway 167 and that Smith brought his vehicle to a stop behind the tank truck. After the tank truck negotiated the crossing, Smith pulled his truck up several feet and stopped it again, with the front bump *195 er of his truck about six feet west of the west edge of the highway. Smith testified that he then looked to his left and saw no vehicles approaching, so he put his truck into first gear and proceeded into the crossing. He stated that he looked to his left again as the front of his truck entered the intersection, and he then observed the Robertson truck for the first time, about 300 feet away, approaching from the north. He immediately applied his brakes, pulled to his right and brought his truck to a complete stop, with the front of his vehicle “about halfway into the first lane, the right hand lane in the southbound direction.” Smith testified that the Robertson truck was in its right, or the outside, lane for southbound traffic on the highway when he first saw it, and that he expected the driver, Robertson, to pull to his left into the inside lane and go around the front of his parked truck and thus avoid an accident, but that instead the Robertson truck struck the cab of plaintiff’s truck.
Robertson testified that he was traveling at a speed of 40 to 45 miles per hour in his right, or the outside, lane of traffic on the highway as he approached the above intersection. He saw the Smith truck approaching the same intersection from the west, on Creswell Lane, when both vehicles were about 400 or 500 feet from it. He knew that stop signs and a red blinking traffic light required motorists on Creswell Lane to stop before entering the crossing, and he assumed that the driver of the Smith truck would obey those traffic signals. He nevertheless let up on his accelerator and reduced his speed to 30 or 35 miles per hour when he was 400 or 500 feet from the crossing, because of the blinking yellow traffic lights at that point. He stated that when he reached a point about 150 feet from the crossing he realized for the first time that Smith did not intend to stop, and he thereupon immediately pulled to his left, into the inside traffic lane, and he applied his brakes momentarily further reducing the speed of his vehicle. He then decided to accelerate the speed of his truck instead of trying to slow it down, in the hope that he could get through the intersection ahead of Smith and thus avoid a collision. His testimony is that there was no tank truck or any other vehicle ahead of Smith as he approached that crossing, that Smith did not bring his truck to a stop at any time before proceeding to cross Highway 167 or before it struck the Robertson vehicle, and that the front of the Smith truck struck the right side of the Robertson vehicle at a point behind the cab, or at about the front of the trailer.
The testimony of Hughes, the passenger in the Robertson truck, throws very little light on the question of how the accident occurred. Hughes was not looking at the highway ahead when it became apparent to Robertson that a collision might occur, and when the latter made Hughes aware of the emergency Hughes immediately got on the floor of the truck, and he did not witness the accident. Hughes did confirm the fact, however, that Robertson was driving about 40 miles per hour as he approached the intersection, and that he reduced the speed of that vehicle to about 30 miles per hour before the accident occurred and before the driver became aware of an emergency.
Other evidence, including photographs taken of the scene of the accident while the vehicles were still there, shows that the front of the Robertson truck was not damaged at all, but that substantial damage was done to the right side of that vehicle, at a point just behind the cab or at about the front of the trailer. After the collision, the Robertson vehicle veered slightly to its left, and it continued to travel in an upright position in a southeasterly direction into the neutral ground. Neither vehicle left any skid marks before the accident occurred. The wheels of the Robertson vehicle became locked immediately after the collision, however, probably as a result of the impact, and that truck left skid marks about 190 feet long extending from the point of impact to the place where the truck came to rest.
*196 The evidence also shows that the front end of the Smith truck and the cab were practically demolished as a result of the accident. The trailer overturned and the photographs and evidence indicate that it was a total loss. The truck portion of the Smith truck-trailer combination apparently was turned around completely as a result of the collision, so that it came to rest facing west after the accident, with the front wheels in the inside southbound lane of traffic and the demolished cab in about the center of the two southbound lanes. The rear wheels of the truck came to rest on the east shoulder of the southbound lanes of the highway, about four or five feet east of the east edge of the concrete slab. The overturned trailer apparently made a 90 degree turn to its right as a result of the impact, and it came to rest with its wheels about on a line with the east edge of the southbound lanes of traffic on the highway, and with the major part of the overturned trailer lying east of the east line of that part of the highway, partly on the east shoulder and on the neutral ground east of the southbound lanes. It is apparent that the Smith truck and trailer traveled several feet east of the point of impact after the collision occurred, a substantial part of both of those units having crossed both southbound lanes of traffic and reached the east shoulder of that part of the highway. We find it difficult to rationalize how the Smith truck and tractor happened to come to rest largely on the east side of the highway if those units, in fact, were parked at the time of the collision, with only the front end of the truck being on the west or outside lane of traffic and the rest of that combination, including all of the trailer and the back end of the truck, being west of that roadway.
Plaintiff argues that the accident could not have occurred as related by Robertson, because the much greater weight of the Smith- truck would have pushed the Robertson vehicle a considerable distance further to the east. There is no merit to that argument, because we find it equally logical, by applying principles of physics, to reason that the momentum of the Robertson combination of vehicles caused the Smith truck to turn sharply to its right when the impact occurred, with the result that the Smith truck came to rest facing in the opposite direction and the tractor turned over on its left side.
The trial judge found that “the version of the accident testified to by defendant, Louis Robertson, has been proved by the preponderance of the evidence,” that “the accident occurred near the center line of the southbound lane of U.S. 167,” and that “the Smith vehicle collided with the right side of the Robertson truck directly behind the right cab door.” He concluded that “plaintiff has failed to prove that defendant was negligent, proximately causing the collision and resulting injuries and damages,” that “the accident was caused by the negligence of the plaintiff in failing to stop in deference to the superior right of way of plaintiff,” and that the evidence fails to show that Robertson had the last clear chance to avoid the accident.
Plaintiff contends primarily that the trial judge erred in holding that Robertson was free from negligence. His argument is that Robertson should have reduced his speed more as he approached the intersection because of the blinking amber traffic lights, especially since he saw Smith approaching the intersection. He relies on State Farm Mutual Insurance Company v. Merritt, 185 So.2d 832 (La.App. 3 Cir. 1966), to support that argument.
We held in Merritt that a motorist on a right of way street who is confronted with a yellow light must exercise caution and vigilance as he enters the intersection in order that he may ascertain whether he can proceed into the crossing with safety. The evidence in the instant suit convinces us that Robertson exercised the required degree of caution and vigilance as he approached this intersection. He reduced his speed before he reached the crossing, and he observed the Smith vehicle approaching *197 as soon as it was reasonably possible for him to do so and long before each vehicle reached the intersection. See LSA-R.S. 32:234: Ardoin v. Crown Zellerbach, 232 So.2d 136 (La.App. 3 Cir. 1970); Insured Lloyds v. Liberty Mutual Insurance Co., 286 So.2d 420 (La.App. 1 Cir. 1973).
Robertson had the right to assume that Smith would observe the existing traffic signals and that he would stop before proceeding to cross Highway 167. We think he determined as soon as it was reasonably possible for him to do so that Smith did not intend to stop, and when he made that observation he immediately took reasonable precautions to avoid a collision. The evidence shows that he moved as far to his left as he could. Some posts and a concrete median prevented him from driving onto the east shoulder of the southbound lanes of traffic.
We find no fault on Robertson’s part in deciding to accelerate the speed of his truck instead of continuing to apply his brakes as he neared the crossing. The evidence indicates that he could not have stopped his truck before he reached the point of impact even if he had continued to apply his brakes. He was 150 feet from the intersection when he first discovered that a collision was imminent. He obviously could not bring his vehicle to a stop within 150 feet, since a distance of 190 feet was required to bring it to a stop after the collision, with all of the wheels skidding. It must have been apparent to him that the accident could not be avoided by continuing to apply his brakes, and we think his decision to accelerate his speed in an effort to get through the crossing ahead of Smith was reasonable, despite the fact that it was made in a sudden emergency.
After considering all of the evidence, we agree with the trial judge that Robertson was free from negligence.
There is no merit to the argument that plaintiff is entitled to recover under the doctrine of last clear chance. One of the elements of proof necessary for the application of that doctrine is a showing that the defendant could have avoided the accident after he discovered, or reasonably should have discovered, plaintiff’s position of peril. Jackson v. Continental Casualty Company, 308 So.2d 438 (La.App. 3 Cir. 1975). We have held Robertson could not reasonably have avoided the accident after he discovered, or should have discovered, Smith’s position of peril.
In view of the above conclusion, it is unnecessary for us to consider the additional argument made by defendant that the doctrine of last clear chance cannot be applied in any case where there is no evidence of any negligence on the part of the defendant. See Kemp v. Kennedy et al., 283 So. 2d 773 (La.App. 1 Cir. 1973); David v. Home Insurance Company et al., 268 So.2d 155 (La.App. 1 Cir. 1972).
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.